UNITED STATES of America, Appellee,

v.

Jose V. REYES, Appellant.

No. 84–5137.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 4, 1985.

Decided April 10, 1985.

Murnaghan, Circuit Judge, filed specially concurring opinion.

Brian K. Miller, Richmond, Va., for appellant.

N.G. Metcalf, Asst. U.S. Atty., Richmond, Va. (Elsie L. Munsell, U.S. Atty., Alexandria, Va., Michael J. Kelly, Student Asst. to the U.S. Atty., on brief), for appellee.

Before HALL and MURNAGHAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

K.K. HALL, Circuit Judge.

Following a bench trial, Jose V. Reyes appeals his convictions of conspiracy to deceive a licensed firearms dealer and aiding and abetting, in violation of 18 U.S.C. §§ 371 and 2, and of making false statements in the acquisition of a firearm and aiding and abetting in the same, in violation of 18 U.S.C. §§ 922(a)(6) and 2. We affirm.

## I.

On December 19, 1983, a federal grand jury returned a two-count indictment against Reyes, charging him with the above offenses. Reyes pleaded not guilty and requested trial to the court.

At trial, Donald R. Johnson, a former partner in Guns, Ltd., located in Goochland County, Virginia, testified that on the morning of September 18, 1982, two individuals came into his store and picked out about five pistols which they wished to purchase. Johnson described one man as tall and slender and the other as stocky. Johnson said that the tall, slender man did most of the talking and looking. Johnson further testified he asked the two men if they were Virginia residents, and when they said they were not, he told them that he could not sell the guns to them. According to Johnson, the tall, slender man then reached into his pocket and pulled out an envelope with $100 bills in it and said,

"Where I come from, money talks." Johnson testified that when he refused to sell guns to the two men, they left but returned about an hour later with another gentleman from Virginia. Johnson said he again refused to sell guns to them and explained to them that he could not sell the guns to this new individual because he was buying the guns for the first two men and that it was illegal to sell guns to out-of-state residents. Finally, Johnson stated that when the men left the second time he noted the license plate number of their car. The evidence revealed that the car was registered to Reyes of Bergenfield, New Jersey.

The record shows that a similar scenario was repeated at a second store before the men finally succeeded in buying three handguns at Red Ford and Son Tri-Cities in Colonial Heights, Virginia.

Lewis E. Clark, the man from Virginia, testified that on September 18, 1982, one Joe Faloon and another man also named "Joe" came to his house and offered him approximately $500 to buy guns for them. Clark testified that once in the stores, the tall man handled the guns, made the final decision on which guns to buy, and handed him the purchase money. According to Clark, the tall man received the change and had possession of the guns at Clark's house after the sale was concluded. Clark identified Reyes as "the fellow that was driving the car," the same "tall fellow" who had asked him to purchase guns on September 18, 1982, and who had possession of the guns the entire time the two men were at Clark's house after the sale.

At the conclusion of the government's case, Reyes introduced no evidence in his defense. After hearing all of the evidence, the district court found Reyes guilty as charged in the indictment.

On April 13, 1984, the district court entered its judgment and commitment order, sentencing Reyes to eighteen months' imprisonment on each count. Five days later, on April 18, 1984, Reyes indicated in writing to his lawyer his desire to appeal and requested that he be appointed a lawyer.

On April 25, 1984, twelve days after entry of judgment, Reyes, by counsel, filed his notice of appeal which was dated April 20, 1984. Reyes' counsel maintains he mailed the notice of appeal on Good Friday, April 20, 1984, in the same building where the district court was located, and expected that it would arrive in the district court clerk's office on Monday, April 23, 1984, ten days after entry of judgment.

After this Court alerted him to the late delivery of the notice of appeal, Reyes' counsel filed in the district court a motion for an extension of time on December 12, 1984, well after the time for filing a notice of appeal under Fed.R.App.P. 4(b) had run. The district court dismissed Reyes' motion for lack of jurisdiction.

## II.

On appeal, Reyes contends that the late filing of his notice of appeal involved excusable neglect. He argues that his untimely notice of appeal should be treated as a motion for an extension of time because his notice was allegedly mailed from the same building where the district court clerk's office is located three days before the ten-day limitation period prescribed by Fed.R.App.P. 4(b). The government maintains that this appeal must be dismissed for want of jurisdiction. We disagree with the government's position.

Fed.R.App.P. 4(b) provides in pertinent part that:

In a criminal case the notice of appeal by a defendant shall be filed in the district court within 10 days after the entry of the judgment or order appealed from.... Upon a showing of excusable neglect the district court may, before or after the time has expired, *with or without motion* and notice, extend the time

for filing a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this subdivision.

(Emphasis added).

Reyes' notice of appeal was filed outside the ten-day period but within the permissible thirty-day extension period. Reyes was not advised by the district court that his notice of appeal was untimely. By the time Reyes' action was docketed in this court, the total forty-day appeal period under Fed. R.App.P. 4(b) had run.

■ In *Shah v. Hutto,* 722 F.2d 1167 (4th Cir.1983) (en banc), *cert. denied,* —— U.S. ——, 104 S.Ct. 2354, 80 L.Ed.2d 827 (1984), we interpreted Fed.R.App.P. 4(a),[1] pertaining to civil appeals, and held that where a notice of appeal in a civil case is filed outside the original appeal period a motion to extend the time must be filed no later than thirty days after the expiration of the original appeal period for us to have jurisdiction over the appeal. Unlike Fed.R. App.P. 4(a), the language of Rule 4(b) empowers the district court to extend the filing period with or without motion. Moreover, the notions of finality in criminal and civil cases are not the same. If this appeal is dismissed for failure to perfect a timely appeal, Reyes may then launch a collateral attack on his conviction, alleging ineffective assistance of counsel for loss of appeal. We, therefore, conclude that a criminal defendant, such as Reyes, who has filed his notice of appeal beyond the time specified in Fed.R.App.P. 4(b), but within the thirty-day permissible extension period, should have the opportunity to seek relief by showing excusable neglect.

We next must consider whether a remand to district court is necessary to determine the matter of excusable neglect.

1. Fed.R.App.P. 4(a)(5), provides that:
   The district court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal *upon motion filed not later than 30 days after the expiration of the time prescribed by this Rule 4(a).* Any such motion which is filed before expiration of the prescribed time may be ex parte unless the court otherwise requires. Notice of any such motion which is filed after expiration of the prescribed time shall be given to the other parties in accordance with local rules. No such extension shall exceed 30 days past such prescribed time or 10 days from the date of entry of the order granting the motion, whichever occurs later.
   (Emphasis added.)

There is a split of authority among the circuit courts of appeals that have addressed this issue. The Eighth Circuit has held that the district court's acceptance of the notice of appeal is a grant of additional time. *United States v. Gibson*, 568 F.2d 111, 112 (8th Cir.1978); *United States v. Williams*, 508 F.2d 410 (8th Cir.1974); *United States v. Mills*, 430 F.2d 526 (8th Cir.1970), *cert. denied*, 400 U.S. 1023, 91 S.Ct. 589, 27 L.Ed.2d 636 (1971). The Ninth and Tenth Circuits have rejected the Eighth Circuit's rule and have remanded such cases to the district court for an excusable neglect determination. *United States v. Lucas*, 597 F.2d 243, 245 (10th Cir.1979); *United States v. Stolarz*, 547 F.2d 108, 111–12 (9th Cir.1976), *cert. denied*, 434 U.S. 851, 98 S.Ct. 162, 54 L.Ed.2d 119 (1977). *Cf. United States v. Whitaker*, 722 F.2d 1533 (11th Cir.1984) (motion for release pending appeal was treated as requisite jurisdictional notice of appeal, rather than remanding case to the district court for an excusable neglect determination).

█ We could remand this case to the district court for an excusable neglect determination. However, we conclude that based on the facts present here the district court would find excusable neglect. Accordingly, we hold that there was excusable neglect and that we have jurisdiction over this appeal and proceed to the merits.

As to the merits, Reyes contends that the evidence was insufficient to convict him of conspiracy. We disagree.

█ Viewing the evidence in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), we conclude that there was substantial evidence to support the finding of the district judge that Reyes was a party to an agreement to commit an unlawful act, giving rise to a conspiracy, and that he understood the nature of the agreement. Reyes was the man with the money. He is the one who did most of the talking and looking. After being told that he could not purchase guns in Virginia because he was a New Jersey resident, he, Faloon, and Clark went to two

more gun stores before successfully purchasing three handguns. It was Reyes who had the final say as to which guns were to be purchased, and who received the change when the sale closed. Reyes is the one who had possession of the guns the entire time he and Faloon were at Clark's house after the purchase. We agree with the district court that the government went beyond proving that Reyes was a knowing participant in a conspiracy and proved that Reyes was the principal in the scheme.

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

MURNAGHAN, Circuit Judge, concurring.

Agreeing with the conclusion reached by Judge Hall and with much of what he has written, nevertheless I write specially to concur because I regard the decision in *Shah v. Hutto*, 722 F.2d 1167 (4th Cir.1983) (*en banc*), *cert. denied*, —— U.S. ——, 104 S.Ct. 2354, 80 L.Ed.2d 827 (1984) an unfortunate example of a nod by Homer. While I am certainly bound by it unless or until modified or overruled, I see a potentially harmful effect of dragging *Shah v. Hutto* which was governed by F.R.App.P. 4(a) concerning civil cases into resolution of a criminal controversy controlled by the significantly different F.R.App.P. 4(b).

Accordingly, I disassociate myself from the language in the majority opinion beginning "In *Shah v. Hutto*, . . ." appearing on page 353. Instead of that language, I, for purposes of my concurrence, substitute the following:

"The language quoted from Rule 4(b) is substantially different from the wording of Rule 4(a), which governs appeals in civil cases. Reyes contends that excusable neglect inescapably applies to explain and justify the two day delay occasioned by failure of the post office to effect, in three days time, prompt delivery to the district court from a mail drop in the very building containing the dis-

trict court to whom the notice of appeal was addressed.

No motion was required by Rule 4(b), so Reyes was entitled to resolution of the question of whether there was excusable neglect. An affirmative holding would establish that the appeal was timely filed."