**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gregory WRICE (90–5703) and Tommy
Goods (90–5479), Defendants–
Appellants.**

**Nos. 90–5479, 90–5703.**

United States Court of Appeals,
Sixth Circuit.

Argued March 22, 1991.

Decided Jan. 23, 1992.

Ed Bryant, U.S. Atty., John Fowlkes, Stuart J. Canale (argued and briefed), Dan Newsom, Asst. U.S. Attys., Memphis, Tenn., for U.S.

Randall P. Salky (argued and briefed) Memphis, Tenn., for Tommy Goods.

William B. Seligstein (briefed), Wagerman & Seligstein, Memphis, Tenn., for Gregory Wrice.

Before MILBURN and BOGGS, Circuit Judges, and GILMORE, District Judge.*

PER CURIAM.

Tommy Goods, Gregory Wrice and Keith Boyce were indicted by a federal grand jury for possession of cocaine with intent to distribute, and for conspiracy to possess cocaine with intent to distribute. *See* 21 U.S.C. § 841(a)(1) & 18 U.S.C. § 2. Goods and Wrice were convicted. Boyce was acquitted. Goods and Wrice now appeal their convictions alleging that some of the evidence against them was improperly admitted. We affirm both convictions.

## I

On August 19, 1989, officers of the Shelby County Metro Narcotics unit executed a search warrant at 3745 Dugan Circle, Apartment 1. The apartment's lessee of record was Gregory Wrice. Inside the apartment, the officers found Tommy Goods lying on a pallet asleep in the kitchen. Next to him were a pair of tennis shoes in which the officers found money and 25.5 grams of crack cocaine. In the bathroom, officers located another 28.8 grams of crack under the sink. They also discovered cooking tubes of a type often used in the preparation of crack cocaine, and a set of scales commonly used by drug dealers. Goods, Wrice, and Boyce were present in the apartment at the time of the raid, as were two other individuals, Stanley Neal and Willie Hackworth.

The police then took aside the persons found in the apartment and questioned them one by one. Goods, having been informed of his *Miranda* rights and having indicated that he understood them, admitted to Officer James Blackwell that the shoes in which the crack was found were his, but he denied owning the drugs or the money.

The defendants were then taken to the Metro Narcotics office for processing. While they were there, they asked to speak to the prosecutor handling their case. They were then placed in contact with an Assistant United States Attorney (AUSA). The AUSA, John Fowlkes, again advised them of their rights before speaking to them. In the course of the ensuing discussion, Goods admitted that "the dope was ours" and that it was to be taken to the Tulane Apartments for distribution to other dealers before being sold for consumption.

Goods and Wrice were released, apparently either on bond or on their own recog-

---

* The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation.

nizance. Twenty days later they were arrested at the Tulane complex in an apartment rented by Shirley Wrice, Defendant Wrice's sister. The police found seventy-five dollars under the bed where Goods was lying, and one and one-half grams of crack in another bedroom from which the police had seen Goods running.

Before trial, the court considered a motion *in limine* from Goods, who argued that the statement he made to AUSA Fowlkes should be suppressed as the product of unlawful coercion. The motion was denied, and the statement was admitted at trial. Because the statement was hearsay as to Wrice, the statement was redacted at trial to eliminate references to him. *See Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

As part of its case in chief, the Government attempted to introduce evidence of the arrest of Goods and Wrice at the Tulane Apartments. Both defendants objected. The district court sustained the objection. The court further ruled that Goods could be questioned about the matter only if he were to deny that he had told prosecutors that he and his codefendants intended to take the drugs to the Tulane Apartments for sale. When Goods testified in his own defense, he denied owning the drugs found at the Tulane Apartments. The district judge then permitted the prosecution to call Officer Pete Kenny of the Memphis Police as a witness. He was the officer who had arrested Goods and Wrice at the Tulane Apartments. His testimony provided details of the arrest.

In its effort to refute Goods' disavowal of the incriminating statement he had made to Fowlkes, the prosecution asked Officer Blackwell, who was present when the statements were made, about the circumstances in which Goods made his incriminating admission. In the course of so testifying, Blackwell told the court that Goods had said: "The dope was *ours*" not "*mine*." In this way, Goods' unredacted testimony was admitted into evidence despite the ruling *in limine* that it was inadmissible against Wrice unless redacted.

On appeal, Goods argues that the district court erred in admitting the incriminating statements he made to Fowlkes. He also argues that the district court abused its discretion by admitting into evidence testimony about his arrest at the Tulane Apartments. He alleges that this is inadmissible propensity evidence under Fed.R.Evid. 404(b). Wrice joins him in the latter argument, and argues further that the admission of Goods' unredacted statement was prejudicial error as to him.

## II

Before we consider these issues, we must turn to the question of whether Wrice's notice of appeal has deprived this court of jurisdiction over his case. We hold it does not.

Federal Rule of Appellate Procedure 4(b) specifies the time within which a convicted defendant must file his notice of appeal. This deadline is a jurisdictional requirement. *United States v. Hatfield*, 815 F.2d 1068, 1073 (6th Cir.1987). Unless a defendant satisfies this requirement, a court has no jurisdiction to hear his case. The rule provides that "notice of appeal by a defendant [in a criminal case] shall be filed in the district court within 10 days after the entry of judgment or the order appealed from...." Fed.R.App.P. 4(b). Yet,

> Upon a showing of excusable neglect the district court may, before or *after* the time has expired, with or *without motion* or notice, extend the time for filing a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise proscribed by this subdivision. *Id.* (emphasis added).

As this court has interpreted the rule, the latest day for filing notice of appeal in a criminal case is ten days following entry of judgment. *United States v. Christoph*, 904 F.2d 1036, 1039 (6th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 713, 112 L.Ed.2d 702 (1991). A district court, however, may grant an extension up to thirty days for excusable neglect. *Id.* at 1040. Therefore, under special circumstances, the time for filing notice of appeal may be up to forty days.

In this case, judgment of conviction was entered against Wrice on March 26, 1990. Wrice did not file the notice of appeal until May 4, 1990. This date is outside the normal ten-day period for filing a notice of appeal, but it is thirty-nine days after entry of judgment. On November 28, 1990, Wrice's attorney appeared before the court below to explain that severe depression had caused his tardiness in requesting an extension of the time to appeal. He presented evidence that he had undergone treatment and the problem was now under control. He then moved for an extension of time for filing on the grounds of excusable neglect. The court granted Wrice's motion for an extension of the filing deadline *nunc pro tunc*, thus making its order retroactive. The effect of this order was to extend the time for filing notice of appeal up to and through May 4, the day which Wrice's notice was filed. Whether the district court had this authority is the question we must now answer.

In *Christoph, supra,* the appellant filed a motion for enlargement on the fortieth day after judgment, but the district court did not grant the motion until the forty-third day. This court held that, because the motion contained the information required in a notice of appeal, the appellate court could treat the appellant's motion for enlargement of time as a timely notice of appeal. Specifically, "the district court retains power, even outside the forty-day period, to grant the extension and validate a notice of appeal filed within the forty days." *Id.* at 1040.

Likewise, in *U.S. v. Hoye,* 548 F.2d 1271 (6th Cir.1977), this court found jurisdiction over the appeal, even though a formal notice of appeal was filed more than eight months after the entry of judgment. There, judgment was entered on June 6, 1975, and a motion for extension was filed the following day. The extension was granted *nunc pro tunc* on February 4, 1976, and a formal notice of appeal was finally filed on February 13, 1976. The court reasoned that:

> [W]here a *document* is filed within the 40-day period which represents a clear assertion of an intent to appeal, courts of appeal have the power to overlook irregularities where fairness and justice so require. Since the motion was itself timely filed and contained most of the essential facts required of a notice of appeal under Rule 3, Federal Rules of Appellate Procedure, we elect to treat it as being in substantial compliance with the requirements of that rule. We treat the provision for entry *"nunc pro tunc"* of the February 4, 1976 order as surplusage, noting that such provision would not cure the defect if it were otherwise fatal. *Id.* at 1273. (emphasis added) (citations omitted).

*Christoph* and *Hoye* stand for the proposition that some document, which is not necessarily a motion for extension but which contains the information needed for a notice of appeal, should be filed within the forty-day time limit in order to appeal. Federal Rule of Appellate Procedure 3(c) requires that the contents of a notice of an appeal specify the party or parties taking the appeal; designate the judgment, order, or part from which appealed; and name the court to which the appeal is taken. Moreover, Rule 3(c) notes that an "appeal shall not be dismissed for informality of form or title of the notice to appeal." As long as a document meets these criteria and is filed within the forty-day outer limit, it can become a timely notice of appeal.

Other circuits have held that a motion for enlargement of time need not be filed or granted within forty days in order to retain jurisdiction. For example, in *United States v. Kaden,* 819 F.2d 813, 817 (7th Cir.1987), judgment was entered on April 10, 1985. Notice of appeal was filed on May 3, 1985, outside the ten-day period, but within the forty-day period. On June 13, 1985, approximately sixty days after judgment was entered, the defendant filed a motion for an extension of time. On June 14, 1985, the motion was granted. On appeal, the Seventh Circuit held that the district court had not abused its discretion in granting the motion for extension of time. *See also U.S. v. Vastola,* 899 F.2d 211, 221 (3rd Cir.1990), *vacated on other grounds,* — U.S. ——, 110 S.Ct. 3233, 111

L.Ed.2d 744 (1990) ("The key question under Rule 4(b) is when the notice of appeal was filed, not when the time extension was granted."); *United States v. Reyes,* 759 F.2d 351, 353–54 (4th Cir.1985), *cert. denied,* 474 U.S. 857, 106 S.Ct. 164, 88 L.Ed.2d 136 (1985); *United States v. Golding,* 739 F.2d 183, 184 (5th Cir.1984); *United States v. Rothseiden,* 680 F.2d 96, 98 (11th Cir.1982), and *United States v. Lucas,* 597 F.2d 243, 245–46 (10th Cir.1979) (per curiam).

Furthermore, Rule 4(b) is distinct from Fed.R.App.P. 4(a), which governs civil appeals. Besides differing on their faces, each rule prescribes separate procedures for obtaining an extension of time. Unlike Rule 4(a)(5), Rule 4(b) does not require the filing of a motion at all, permitting extension "with or without motion or notice". Fed.R.App.P. 4(b); *see Reyes,* 759 F.2d at 353; *United States v. Dominguez,* 810 F.2d 128, 129 (7th Cir.1987). The time limits in Rule 4(b) are also more accelerated than those of its civil counterpart, Rule 4(a), with more deference accorded to the district court's discretion over excusable neglect in criminal appeals. *Pratt v. McCarthy,* 878 F.2d 331, 332 (9th Cir.1989). Rule 4(a) therefore has no bearing on the criminal case at hand, and does not affect the above analysis and precedent of this circuit concerning Rule 4(b).

We thus hold that jurisdiction exists over appellant Wrice. Wrice's notice of appeal was filed within the forty-day outer limit and excusable neglect was found. The fact that the motion for an extension of time was filed and granted after forty days from the entry of judgment is irrelevant. As long as a notice of appeal, or a document containing information required for appeal, is filed with the district court within forty days of judgment, this court has jurisdiction.

### III

■ Since there is jurisdiction over Wrice, we consider the merits of his appeal. We hold that there is an adequate basis to affirm Wrice's conviction.

Wrice challenges the sufficiency of the evidence, arguing that the drug equipment was found in the bathroom and not in his immediate reach, and that the drugs themselves were in the living room in an area readily accessible to everyone in the house, not just Wrice. However, the drugs were in Wrice's apartment, as was the equipment for cooking and weighing the cocaine base. There was a statement by a co-defendant that all three defendants owned the drugs, and planned to distribute them, and Wrice's subsequent arrest at the place of distribution indicated plan and opportunity. Clearly, there was sufficient evidence to support a finding of guilt beyond a reasonable doubt.

■ Wrice also complained that the trial court improperly redacted a statement that implicated his co-defendant. Yet, Wrice has no standing to assert that his co-defendant's right against self-incrimination was violated. Wrice makes an argument based on *Bruton v. U.S.,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), that the redaction and Goods' subsequent testimony taints Wrice. *Bruton* involved a drug trial in which a co-defendant's extra-judicial confession was found to implicate defendant. However, in *Bruton,* the co-defendant did not testify. In the instant case, it is clear that the declarant not only was available, but actually testified, and therefore there is no *Bruton* violation. As a result, we find ample basis to affirm Wrice's conviction.

### IV

We now turn to Goods' case. He contends that his admission of ownership of "the dope" was involuntary, and elicited by promises of leniency and immediate release in violation of his Fifth Amendment rights.

■ When a defendant asserts that a confession was coerced by a promise, the burden is on the Government to prove, by a preponderance of the evidence, that the confession was voluntary. *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618 (1972). In determining the voluntariness of a confession, a reviewing court will not disturb the trial court's find-

ings concerning specific events surrounding the confession unless clear error appears on the record. *United States v. Murphy,* 763 F.2d 202, 206 (6th Cir.1985), *cert. denied, Stauffer v. U.S.,* 474 U.S. 1063, 106 S.Ct. 812, 88 L.Ed.2d 786 (1986). However, the appellate court must independently determine how the accused reacted to the events, and the legal significance of how he reacted. *Id.* The issue is whether the will of the accused has been overwhelmed by official pressure. *Id.* at 205. We consider the psychological impact on the accused by the totality of the circumstances of the confession, including the age of the accused, his level of education and intelligence, his physical condition and emotional state at the time of the confession, his expressed fears of violent reprisals, actual physical punishment, the proximity of the coerciveness of the confession as given, and the inherent coerciveness of the confession as given. *Id.*

In determining the circumstances of Wrice's confession, the district court chose to credit the testimony of Officer Blackwell over that of the defendant. According to Blackwell, Fowlkes gave the defendants their *Miranda* warnings, and explained the possible penalties authorized by the statutes that might be involved in a prosecution of the three defendants. Fowlkes also explained, Blackwell said, that the Sentencing Guidelines established a procedure for allowing the Government to move to reduce a convicted defendant's sentence where he has given substantial assistance to the authorities. *See* U.S.S.G. § 5K1.1. Blackwell's testimony does not indicate that anyone promised to make such a motion.

Testifying on his own behalf, Goods claimed that he agreed to cooperate, and that Blackwell had told him that the case would be dismissed if all three of the accused arrested in Wrice's apartment cooperated by working undercover for the police. Goods also testified that Blackwell told them that they could "walk out like they walked in," if they cooperated by working undercover. Nonetheless, the court below concluded that Goods had not been "baited" into admitting ownership in exchange for a § 5K1.1 motion. The court

also ruled that there was no basis for finding that Goods had been engaged to do undercover work for drug enforcement authorities.

We find nothing clearly erroneous in the factual determination of the district court's ruling. Turning to the legal issue of whether the confession was voluntary in the circumstances found by the district court, we concede, for the sake of argument, that a promise of lenient treatment or of immediate release may be so attractive as to render a confession involuntary. *See Streetman v. Lynaugh,* 812 F.2d 950, 957 (5th Cir.1987), *reh. denied en banc,* 818 F.2d 865 (5th Cir.1987), *on remand,* 674 F.Supp. 229 (E.D.Tex.1987) (a promise of immediate release or that any statement will not be used against accused is a promise so attractive that it renders resulting confession involuntary). We find nothing in the discussion between Goods, Fowlkes, and Blackwell rising to the level of an irresistible inducement that would render the confession involuntary. *Cf. Hutto v. Ross,* 429 U.S. 28, 30, 97 S.Ct 202, 203–04, 50 L.Ed.2d 194 (1976) (confession during course of negotiating plea bargain, which was later withdrawn, was not involuntary). Nothing in the record indicates that Goods was especially sensitive to pressure, that he had been physically abused, or that his emotional or psychological equilibrium had been upset by his treatment at the hands of officials. Indeed, it was defendants who asked to speak to a prosecuting official. From this fact, it is reasonable to infer that the ensuing discussion about sentence reduction and undercover cooperation was within the contemplation of the defendants when they asked to talk to a prosecutor, and not the result of illegitimate efforts to coerce them to confess.

## V

■ The next matter to be considered is Goods' contention that evidence of unrelated misconduct was admitted erroneously and to his prejudice.

Evidence of unrelated misconduct may not be admitted to prove conduct in con-

formity therewith. Fed.R.Evid. 404(b). It may be used to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," *id.*, unless its prejudicial effect substantially outweighs its probative value. Fed.R.Evid. 403; *United States v. Acosta–Cazares,* 878 F.2d 945, 948–49 (6th Cir.) (per curiam), *cert. denied* 493 U.S. 899, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989). A two-step analysis is undertaken in ruling on evidence submitted under Rule 404(b). *Id.* The court must decide whether the evidence proffered is probative of motive, opportunity, etc., and then consider whether the probative value of the evidence is outweighed by its potential prejudicial effect. *Id.* We review the determinations of the trial court for abuse of discretion. *Id.* at 948.

Goods claims that the district court abused its discretion in permitting Officer Kenny to testify because "by allowing this testimony[,] the district court judge gave the jury the opportunity to convict defendant Goods for conduct proving propensity rather than for the offense for which he was on trial." He does nothing more to demonstrate an abuse of discretion on the part of the district court.

This argument articulates the reason why Rule 404(b) excludes propensity evidence, but it ignores the fact that evidence of unrelated misconduct may be admissible to show opportunity or state of mind, provided that it is not unduly prejudicial. The court below gave careful consideration to the probative value of Officer Kenny's testimony and decided not to admit it unless Goods denied some material aspect of the events at the Tulane Apartments. The Court's treatment of this evidence shows a careful use of discretion, not abuse of it. Goods himself opened the door to Kenny's testimony when he denied that the drugs found in Wrice's sister's apartment were his. In addition, the court below gave an appropriate limiting instruction as to the relevance of the officer's testimony. The Court told the jury that:

[e]vidence that an accused committed an act on one occasion is not in and of itself evidence that such a person did a similar act on another occasion. In other words, testimony that a defendant ... may have committed at some subsequent time an act similar to the act or acts alleged in the indictment in this case may not be considered by the jury in determining whether the accused in fact committed any act alleged in the indictment. Indeed, evidence or testimony concerning an act [of a] similar nature allegedly committed at some time or place not charged in the indictment may not be considered for any purpose whatsoever unless the jury finds that the other evidence in the case, standing alone, establishes beyond a reasonable doubt that the accused did the particular act charged in the indictment....

These instructions state the applicable law accurately. The offense with which Goods was charged has two elements: possession of cocaine, the *actus reus,* and an intention to distribute it, the *mens rea.* Each element must be proven beyond a reasonable doubt. Hence, when a jury considers a "possession with intent case," it must separate the issues of possession and intention and consider first whether the evidence is sufficient to support a finding of possession beyond a reasonable doubt. Only then may the jury turn to the question of the defendant's state of mind. In making the former determination, the jury may not take Rule 404(b) evidence into account; in making the latter determination, it may. In this case, the effect of the court's instruction was to caution the jury to consider first the question of whether Goods possessed cocaine, without reference to Goods' subsequent arrest, and to approach the question of his intention only after it had resolved the prior issue against him beyond a reasonable doubt.

Appropriate curative instructions, such as those given in this case, are generally held sufficient to curb the jury's putative tendency to convict on the basis of propensity evidence. *See United States v. Ellzey,* 874 F.2d 324, 329 (6th Cir.1989). Accordingly, we find no abuse of discretion in the district court's admission of Officer Kenny's testimony.

## VI

For the foregoing reasons, the convictions of both Gregory Wrice and Tommy Goods are AFFIRMED.

BOGGS, Circuit Judge, concurring in part and dissenting in part.

I concur in all that the court's opinion has to say with regard to defendant Tommy Goods. With regard to defendant Wrice, however, I would hold that we do not have jurisdiction over his appeal. With regard to the jurisdictional point, the court's opinion amply sets out the relevant texts and the ambiguity contained in Rule 4(b), Fed.R.App.P., an ambiguity that does not now exist in Fed.R.App.P. 4(a), governing civil appeals. The issue before us, which has not been faced squarely in any reported case, is whether the ambiguity in 4(b) should be resolved by determining that that rule was meant to be the opposite in the rule of 4(a), or whether it should be determined on its own merits, and then resolved in the more sensible fashion.

The fundamental problem created by the court's decision is stated quite plainly in the court's concluding sentence on this subject (page 410):

> As long as a notice of appeal, or a document containing information required for appeal, is filed with the district court within forty days of judgment, this court has jurisdiction.

In other words, although this court will not normally take up such a case (and indeed, may well not be empowered to do so), such a document can remain in a kind of jurisdictional limbo until life is breathed into it at some later time. That spirit would be imparted by a motion, urging the court to extend, *nunc pro tunc*, the time for filing a notice of appeal. Under this court's decision today, such a motion may be made not only nearly a year late, as was done here, but apparently *at any time*. This creates a situation that is unsound in principle and is not required by the language of Rule 4(b). Indeed, the natural sense of the language "after *the time* has expired" is that "the time" means the *original*, 10-day time for appealing, the same "time" that is referred to less than 10 words later as being extended from its original 10-day period.

## I

### The Case Law

Neither *Christoph* nor *Hoye* is on all fours with this case. In *Christoph*, the motion for extension of time was made within the 40-day period. 904 F.2d at 1037. Only the district court's decision occurred outside the 40-day period. *Id.* at 1040. In *Hoye*, the motion for extension was made the very next day after judgment, and the court had simply never ruled on it. 548 F.2d at 1273. The court held that the motion for extension of time was itself a proper notice of appeal, and thus timely. Neither of the cases involved a notice filed outside the original 10-day period *and* a motion for extension filed outside the extended 40-day period.

## II

### The Textual History of the Appeal Rules

As noted by the court, Rule 4(a)(5), governing civil appeals, clearly would bar jurisdiction over Wrice's appeal. However, the difference in language between Rules 4(a)(5) and 4(b) does not appear to have been inserted for the purpose of denying jurisdiction over civil appeals in a situation where criminal appeals should be permitted. Instead, the two rules have generally proceeded on a parallel track for quite some time. In 1967, the Federal Rules of Appellate Procedure were introduced, with Rule 4(a) being derived from Fed.R.Civ.P. 73(a) "without any change of substance," according to the Advisory Committee's notes. Rule 4(b), according to the same notes, was derived from Fed.R.Crim.P. 37(a)(2) "without change of substance." Thus, these rules actually pre-date the current appellate rules.

A glance at the 1967 Appellate Rules shows that the two rules were remarkably similar both in language and substance. The third paragraph of Rule 4(a) read as follows:

Upon a showing of excusable neglect, the district court may extend the time for filing the notice of appeal by any party for a a period not to exceed 30 days from the expiration of the time otherwise prescribed by this subdivision. Such an extension may be granted before or after the time otherwise prescribed by this subdivision has expired; but if a request for an extension is made after such time has expired, it shall be made by motion with such notice as the court shall deem appropriate.

*Federal Rules of Appellate Procedure,* 88 S.Ct. 2336 (1968). Compare this with the following similar provision, taken from Rule 4(b):

Upon a showing of excusable neglect the district court may, before or after the time has expired, with or without motion and notice, extend the time for filing a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this subdivision.

*Ibid.* Except for the provisions requiring some requests involving civil appeals to be made by motion, these rules are practically identical.

The part of Rule 4(b) quoted above has not changed since 1967. A 1979 amendment created the current version of Rule 4(a)(5), but as the Advisory Committee's notes make clear, this amendment was not intended to make any substantive change in the rule.

A literal reading of [the 1967 rule] would require that the extension be ordered and the notice of appeal filed within the 30 day period, but despite the surface clarity of the rule, it has produced considerable confusion. See the discussion by Judge Friendly in *In re Orbitec,* 520 F.2d 358 (2d Cir.1975). The proposed amendment would make it clear that a motion to extend the time must be filed no later than 30 days after the expiration of the original appeal time, and that if the motion is timely filed the district court may act upon the motion at a later date, and may extend the time not in excess of 10 days measured from the date on which the order granting the motion is entered.

Fed.R.App.P. 4, 1979 amendment notes. This note demonstrates that the amendment was meant to *clarify* the rules, not change them. The new language was added to insure that an appellant could file a motion within the "total appeal period," rather than being an effort to change a previous rule that allowed an unlimited period to file the motion. In light of this history, using the 1979 amendment to draw a previously unknown distinction between civil and criminal appellate procedure violates the spirit and the letter of the rules.

Furthermore, the purpose of having a time limit on appeals, criminal or civil, is to create a condition of repose for litigation. The court's decision today introduces ongoing uncertainty into any such repose.