978 F.2d 1259
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Carolyn BOOKER, Defendant-Appellant.
 No. 92-5174.
 United States Court of Appeals, Sixth Circuit.
 Nov. 5, 1992.
 
 Before KENNEDY and MILBURN, Circuit Judges, and POTTER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Carolyn Booker appeals her conviction for aiding and abetting in the unlawful possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). On appeal, the sole issue is whether the district court properly denied defendant's motion to suppress her confession that the cocaine found in the trunk of the vehicle in which she was traveling belonged to her. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 On August 20, 1990, at approximately 2:23 a.m., Officer Edward E. Hall of the Memphis Police Department was parked in a police vehicle on a ramp at the Madison Avenue exit on Interstate 40 in Memphis, Tennessee, operating a radar gun directed at eastbound traffic. Officer Hugh Word, another Memphis Police Officer, was parked in a police vehicle next to Officer Hall and was also operating a radar gun. Officer Hall clocked a 1990 Lincoln on his radar gun at 54 miles per hour in a 45 mile per hour zone. Officer Hall advised Officer Word that he obtained a reading of 54 miles per hour and that the 1990 Lincoln should be stopped. Officer Word pulled over the Lincoln at the next exit. Word then used the public address system in his vehicle to tell the driver of the Lincoln to exit the vehicle and bring his driver's license. The Lincoln was occupied by its driver, John Buchanan, defendant Booker, defendant Booker's two adult daughters, an adult male known as James Devia, and a child. John Buchanan exited the vehicle, and Officer Word advised him he was being stopped for speeding. At this time, Carolyn Booker, who was a passenger in the right front seat of the Lincoln, exited the vehicle and approached the officers. According to the officers, Booker, who appeared nervous, attempted to distract them from questioning Buchanan by talking to them.
 
 
 3
 Hall interviewed Buchanan, and Word interviewed Booker. Buchanan told Hall that he did not have his driver's license and that his name was Dante Sawyer. Buchanan also gave Officer Word a date of birth which would have made him considerably younger than his appearance indicated. Buchanan was then arrested for driving without a license. Once arrested, he told officers his true name and age. Buchanan told Hall that they had been to Texas, and he had known Booker for about a year.
 
 
 4
 Ms. Booker told Word that they had been to a funeral and that one of the passengers was her daughter's husband. However, after speaking with the daughter, the officers learned that this was not true. After discussing the inconsistencies in Buchanan's and Booker's statements, the officers began to suspect some type of illegal activity was occurring.
 
 
 5
 After Buchanan was taken into custody and placed inside one of the police vehicles, the officers asked Booker about the ownership of the Lincoln. Booker told the officers that she had rented the car and had allowed Buchanan to drive. She produced a rental agreement which showed the renter as "Cuelin Booker." J.A. 120. At the time, Officer Hall thought that this spelling was simply a misspelling of Booker's name. The name "Carolyn Booker" was also listed on the rental agreement as an additional driver.
 
 
 6
 The officers then told Booker that there had been problems with people carrying illegal items on the interstate and that some of her and Buchanan's statements conflicted. They asked for consent to search the car and informed Booker that the consent was voluntary and could be withdrawn at any time. Booker was given a written request for consent to search the automobile which she voluntarily signed.
 
 
 7
 According to the officers, Booker appeared nervous and her gestures were animated; however, she appeared to understand the consent form and the officers' explanation of the consent to search. In fact, she told the officers that she did understand the consent form. The officers searched the trunk of the car including the lining of the trunk behind the rear seat. This lining had visible snaps with which to pull back the carpet and reveal a compartment which is apparently a standard feature in a Lincoln automobile. The officers found $151.00 in a green tapestry bag, $150.00 in a white cloth bag, and two zipper-locked freezer bags containing 913 grams of cocaine.
 
 
 8
 At this point, all the occupants in the vehicle were arrested. Sergeant Lonnie Thweatt and three other officers joined Hall and Word at the scene of the arrest. The five adults were then transported to the Organized Crime Unit ("Unit"), and the juvenile was taken to Juvenile Court.
 
 
 9
 Officer Hall testified that approximately twenty to thirty minutes elapsed from the time the Lincoln was stopped to the time the adults were transported to the Unit. Upon arrival at the Unit, Officers Thweatt, Hall, and Word found the doors to the Unit locked. Officer Thweatt then telephoned for someone to open the Unit. While they waited for someone to come and unlock the doors, Officers Hall and Word and the five adults remained in a hallway of the building where the Unit was located. During this time, Booker requested to go to the bathroom. However, it is not clear from the record how much time expired between Booker's request to go to the bathroom and when she was actually taken, but it was approximately fifty minutes to an hour before an officer arrived with a key to the Unit.
 
 
 10
 Both Hall and Thweatt testified that it was a warm August night. However, neither recalled it being unbearably hot, and it is unclear whether the hallway in which they waited for the Unit to be opened was air conditioned. According to the officers, Booker made no statements to them regarding the case during the period of time they waited for the Unit to be opened.
 
 
 11
 According to Booker's daughter, Sonya Smith, Booker was acting irrational while they were waiting in the hallway. According to Smith, Booker made reference to an earthquake and to Iraq bombing the United States and killing "all you crazy people." J.A. 78. In addition, Smith described Booker's behavior as nervous, thirsty, and talkative. She also stated that during this time, Booker voluntarily admitted, without being questioned, that the drugs belonged to her. Smith did testify, however, that defendant told Officer Thweatt the value of the cocaine only after he asked her, but this was disputed by the officers. Smith attributed her mother's supposedly bizarre behavior, in part, to Vivarin tablets which her mother had taken. She described the overall atmosphere that evening as hot, nervous, and tense.
 
 
 12
 Booker, on the other hand, denies admitting that the cocaine was hers. Rather, she asserts that she merely stated to the police officers that she "would take the charge" for the cocaine when Officer Thweatt asked, "who will take this charge?" J.A. 96. Booker stated that Officer Thweatt never threatened her or made promises to her. She also testified that she told the police officer she paid $35,000 for the cocaine after he asked her what the street value was. Booker stated that although she was angry, she was rational at the time she made the statements. According to Booker, she made these statements before being given her Miranda warnings.
 
 
 13
 Once inside the Unit, Officer Thweatt collectively advised Booker and the other occupants of the Lincoln of their Miranda rights. According to Officer Thweatt, after being advised of her rights, Booker repeatedly told him that the drugs belonged to her, that she had bought them in Houston, Texas, for $35,000, and that they were for her own use. Officer Thweatt testified that Booker appeared fidgety, talkative, and, in his opinion, she was "wired on drugs." J.A. 153. Officer Thweatt also stated that Booker volunteered the statements without being asked and without coercion or promises. Officer Hall's testimony corroborated that of Officer Thweatt.
 
 B.
 
 14
 Defendant Carolyn Booker was indicted on September 19, 1991, in a one-count indictment charging her with aiding and abetting in the unlawful possession with the intent to distribute approximately 913 grams of cocaine in violation of 21 U.S.C. § 841(a)(1). On November 14, 1990, defendant filed a motion to suppress evidence. This motion was referred to a magistrate judge on November 20, 1990, and after an evidentiary hearing held on December 27, 1990, the magistrate judge recommended that defendant's motion be denied.
 
 
 15
 Defendant timely objected to the magistrate judge's recommendation, and on April 17, 1991, the district court held a further evidentiary hearing to consider defendant's motion to suppress. The only evidence offered at this hearing was the testimony of defendant's witness, James Wilkins, who testified concerning the amount of time that defendant was held at the Organized Crime Unit offices. During the hearing, the parties stated they wanted the district court to resolve defendant's motion to suppress on the basis of the evidence presented to the magistrate judge. On June 19, 1991, the district court entered an order adopting the magistrate judge's report and recommendation to deny defendant's motion to suppress.
 
 
 16
 Defendant was tried before a jury on August 5, 1991, but the case ended in a mistrial on August 7, 1991, after the jury failed to reach a verdict. Defendant's retrial commenced on October 7, 1991, and on October 8, 1991, the jury returned a verdict of guilty. Defendant was subsequently sentenced to seventy-eight months of incarceration followed by three years of supervised release. This timely appeal followed.
 
 II.
 A.
 
 17
 Whether a confession is voluntary is a mixed question of law and fact. United States v. Murphy, 763 F.2d 202, 206 (6th Cir.1985), cert. denied, 474 U.S. 1063 (1986). Therefore, we will not disturb the district court's findings of the specific facts surrounding the confession absent clear error. Id.; United States v. Wrice, 954 F.2d 406, 410-11 (6th Cir.) (per curiam), cert. denied, 112 S.Ct. 2286 (1992). However, we must determine independently how the defendant reacted to the outside events and review de novo the legal significance of her reaction to them. Id. "The issue is whether the will of the accused has been overwhelmed by official pressure." Id. at 205.
 
 B.
 
 18
 Defendant's argument consists of the following:
 
 
 19
 Appellant submits that her statements, whether made before or after Miranda warnings, were the product of her fear, exhaustion, and physical discomfort. Not all of her fear was the product of police action; Booker expressed some fear of those associated with her daughter; and not all of her fear was for herself, but for her loved ones. Nonetheless, the fear operated to deprive the defendant of an "essentially free and unconstrained choice." Appellant submits, therefore, that her inculpatory statements should not have been admitted against her.
 
 
 20
 Defendant's Brief at 26. (Citation omitted.)
 
 
 21
 In this case, the magistrate judge found that defendant Booker confessed to her ownership and the value of the cocaine without being questioned or prompted by the police officers present. Furthermore, the magistrate judge concluded that Booker's confessions were voluntary. The district court agreed with both the finding and the conclusion. We likewise agree.
 
 
 22
 In Colorado v. Connelly, 479 U.S. 157 (1986), the Supreme Court held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Id. at 167. The Court also held that, in the absence of coercive police activity, the taking of a defendant's statements and their admission into evidence do not violate the Due Process Clause. Accordingly, where Miranda is not violated, there must be coercive police activity as a necessary factor to finding a confession involuntary. Here, Miranda was not violated, and there was no coercive police activity in this case.
 
 
 23
 Finally, defendant's reliance on United States v. Murphy, 763 F.2d 202 (6th Cir.1985), cert. denied, 474 U.S. 1063 (1986), to support her argument that her confessions were not voluntary is misplaced. In Murphy, the defendant confessed to bank robbery while being apprehended by a police dog which was biting him on the neck, arms, and legs. The use of the dog was police activity and was coercive, but Murphy is clearly distinguishable from this case.
 
 C.
 
 24
 At the beginning of the factual section of her brief, Booker contends that the statements she made originally to the police after being stopped on the interstate were "unwarned and uncounseled." Defendant's Brief at 5. This allegation could be interpreted as a claim that the government failed to give the Miranda warnings as required by the Sixth Amendment. However, defendant does not make this contention in the argument section of her brief.
 
 
 25
 The district court erroneously stated that the magistrate judge had determined that defendant's confessions were made after she received her Miranda warnings. This is incorrect. The magistrate judge simply concluded that regardless of whether defendant made her confessions before or after she received her Miranda warnings, her statements were admissible because they were voluntary. The district court's harmless error is immaterial in this case, however, because the magistrate judge is correct. Miranda warning requirements do not apply to a spontaneous and voluntary utterance which is made under no compulsion to speak. See Murphy, 763 F.2d at 205; United States v. Avery, 717 F.2d 1020, 1025 (6th Cir.1983), cert. denied, 466 U.S. 905 and 466 U.S. 994 (1984). The magistrate judge found, and the district court agreed, that the police officers made no attempt in any way to question defendant Booker before they explained her Miranda rights to her. While defendant disagrees with this finding, it is not clearly erroneous. Therefore, because any statements defendant made to the police before she received her Miranda warning were voluntary and made under no compulsion, there was no violation of her Sixth Amendment right to counsel.
 
 III.
 
 26
 For the reasons stated, the district court's judgment of conviction is AFFIRMED.
 
 
 
 *
 Honorable John W. Potter, Senior United States District Judge for the Northern District of Ohio, sitting by designation