81 F.3d 162
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dereck Maurice VANN, Defendant-Appellant.
 No. 94-2180.
 United States Court of Appeals, Sixth Circuit.
 March 25, 1996.
 
 Before: KEITH, MARTIN, and NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 Dereck Maurice Vann appeals his conviction for conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841, 846. After a five day trial, a jury found Vann guilty on one count of conspiracy to distribute, and the district court sentenced Vann to the mandatory minimum term of five years incarceration followed by four years of supervised release. Vann timely filed an appeal to this Court, asserting that several errors occurred below. After consideration of Vann's claims, we AFFIRM.
 
 
 2
 Vann's arrest and conviction arose out of a large Federal Bureau of Investigation inquiry into the suspected drug activities of Nathaniel Tucker. In connection with this investigation, on September 21, 1989, William Grylls, an undercover agent for the FBI, met with Vann and a co-conspirator Christopher Pegues to arrange for the sale and purchase of one kilogram of cocaine. The parties negotiated at one "Woodruff's" home, and Agent Grylls agreed to sell one kilogram of cocaine to Vann and Pegues for a price of $24,000.00.
 
 
 3
 Grylls and Pegues negotiated over the next few days over the details of the sale. Two weeks after the initial meeting at Woodruff's home, Grylls and Pegues met at a White Castle restaurant near Tiger stadium in Detroit. At that meeting, Agent Grylls was prepared to complete the deal for the sale and purchase of the cocaine. However, Pegues refused, telling Grylls that he did not want to purchase the cocaine until his "buddy" was available to provide part of the purchase money and back up protection.
 
 
 4
 Two days later, Agent Grylls and Pegues met again at the White Castle at approximately nine o'clock in the morning. Grylls told Pegues, who had gotten into Grylls' car, that the deal would take place at the "old train station." While Grylls and Pegues arranged for the location of the cocaine sale, Vann was waiting for Pegues in his truck, parked in the White Castle parking lot. Pegues exited Grylls' vehicle and stepped into Vann's truck. Pegues and Vann then followed Grylls to the train station, where Pegues purchased the cocaine while again sitting in Grylls' vehicle. Pegues then returned to Vann's truck.
 
 
 5
 As Pegues and Vann started to leave the parking lot at the train station, FBI agents stopped Vann's truck and arrested both individuals. Pegues and Vann were taken to the FBI offices in Detroit, where federal agents read them their rights and interviewed them in separate rooms. Vann read and signed a written waiver of his rights at that time.
 
 
 6
 Vann told the officers that he had known Pegues for six years, that he had been selling one or two ounces of crack cocaine every week for several years in the Mt. Clemens, Michigan area, and that he had provided $12,000.00 of the $24,000.00 purchase price for the kilo of cocaine. He also stated that he had met agent Grylls, but that Pegues had done most of the negotiating. During the interview, Vann's pager continually alerted, and Vann told the agents that it was his girlfriend or some other friend.
 
 
 7
 Vann first takes issue with the prosecutor's actions in obtaining an indictment before a grand jury, and seeks to have this Court dismiss his indictment. Specifically, Vann claims that the prosecutor gave improper and prejudicial information to the grand jury regarding: 1) Vann's refusal to negotiate a plea; and 2) his refusal to inform on other persons associated with the purchase and sale of illegal narcotics. Vann also claims the prosecutor elicited exaggerated evidence concerning Vann's guilt.
 
 
 8
 The Supreme Court has held that federal courts should apply the harmless error standard for reviewing claims that an indictment should have been dismissed because of prosecutorial misconduct. United States v. Mechanik, 475 U.S. 66, 71-72 (1986). In addition, a jury's guilty verdict renders harmless any alleged error in grand jury proceedings in the vast majority of cases. Id. at 73. We will not invoke our supervisory powers to dismiss an indictment absent "a violation of those 'few, clear rules which were carefully drafted and approved by this Court and by Congress to ensure the integrity of the grand jury's functions'." United States v. Williams, 504 U.S. 36, 46 n. 6 (1992) (quoting Mechanik, 475 U.S. at 74 (O'Conner, J., concurring in judgment). Finally, it is inappropriate for a federal court to dismiss an indictment "in order to chastise what the court view[s] as prosecutorial overreaching." Bank of Nova Scotia v. United States, 487 U.S. 250, 256 (1988) (quoting United States v. Hasting, 461 U.S. 499, 507 (1983)).
 
 
 9
 After careful review of the record, we conclude that the alleged prosecutorial misconduct, if error at all, was harmless. The allegedly prejudicial remarks made by the prosecutor were in response to specific questions raised by the grand jury. In fact, the grand jury expressed anger at the fact that Vann was out on bond after his arrest, and questioned the prosecutor regarding this fact. The prosecutor cautioned the jury that this was normal procedure, and that it should not base its decision to indict on the fact that Vann was or was not in jail. Even if we were to assume that these facts constitute prosecutorial misconduct, we view this misconduct to be harmless.
 
 
 10
 As to Vann's claim that his grand jury indictment was based on exaggerated and improper evidence, we note that indictments may be based on hearsay evidence, Costello v. United States, 350 U.S. 359, 363 (1956), upon evidence obtained in violation of the Fourth Amendment, United States v. Calandra, 414 U.S. 338, 349 (1974), and this Court will not engage in speculation as to whether the grand jury would or would not have returned an indictment absent the alleged improper evidence. United States v. Adamo, 742 F.2d 927, 938 (6th Cir.1984), cert. denied, 469 U.S. 1193 (1985). Accordingly, we reject this claim.
 
 
 11
 Vann next challenges the voluntariness of his confession. We review the district court's findings of fact concerning the voluntariness of Vann's confession for clear error and the legal conclusion drawn from those facts de novo. United States v. Wrice, 954 F.2d 406, 411 (6th Cir.), cert. denied, 504 U.S. 945 (1992). Vann claims that the agents' promises to release him and to avoid forfeiture of his truck, coupled with Vann's alleged emotionally distraught state during his interrogation render his confession involuntary. We disagree.
 
 
 12
 In determining whether a confession is voluntary we examine whether the government agents engaged in: 1) coercive activity; 2) that became a crucial motivating factor; 3) in overbearing the will of the accused. United States v. Rigsby, 943 F.2d 631, 635 (6th Cir.1991), cert. denied, 503 U.S. 908 (1992); McCall v. Dutton, 863 F.2d 454, 459 (6th Cir.1988), cert. denied, 490 U.S. 1020 (1989). None of these factors are present in this case. It is true that the agents told Vann that his truck would not be forfeited and he would be released if he cooperated. However, these facts alone do not make Vann's confession involuntary. Indeed, the police conduct here is a far cry from the kind of conduct leading to the conclusion that an individual's will has been overborne by coercive activity. In fact, the agents kept their promises to Vann, released him, and returned his truck after Vann decided to cooperate with them.
 
 
 13
 Vann next makes several objections on a variety of grounds to the admission of certain evidence at trial. We dispose of these quickly.
 
 
 14
 At trial, the prosecution elicited testimony regarding Vann's admission that he had been selling drugs for several years. Vann claims that this evidence was inadmissible under Fed.R.Civ.P. 404(b), which prohibits the admission of other crimes, wrongs, or acts to prove a person's conduct in conformity with those acts on the occasion in question. Rule 404(b) does allow evidence of prior acts, however, to show motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Fed.R.Civ.P. 404(b).
 
 
 15
 In determining whether evidence is admissible under 404(b), this Court has held that a district court must first determine whether the evidence is admissible for a proper purpose and relevant, and then must ensure that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. United States v. Wynn, 987 F.2d 354, 356 (6th Cir.1993); United States v. Feinman, 930 F.2d 495, 499 (6th Cir.1991). At trial, Vann claimed that he was not aware that Pegues was entering into a drug deal during the meetings with Grylls. Accordingly, this evidence was admissible to prove knowledge or absence of mistake.[1]
 
 
 16
 In addition, the district court did not abuse its discretion in determining that the probative value of this evidence was not substantially outweighed by its prejudicial effect. Feinman, 930 F.2d at 499 (stating that the district court has broad discretion on this prong of the test). Vann's defense at trial was that he had no idea that Pegues was entering into a drug transaction with Grylls. Instead, Vann claimed that he thought Pegues was interviewing for a job. The evidence of Vann's prior drug sales negated the inference that he did not know of Pegues' drug purchase and supported the inference that he was involved with Pegues in the transaction.
 
 
 17
 As to Vann's other evidentiary objections, we review the district court's admissibility determinations under an abuse of discretion standard. United States v. Blakeny, 942 F.2d 1001, 1029 (6th Cir.), cert. denied, 502 U.S. 1008 (1991). After a careful review of the record, we conclude that the district court did not abuse its discretion in admitting the allegedly inadmissible evidence.
 
 
 18
 Vann also claims that certain acts of prosecutorial misconduct rendered his trial fundamentally unfair. This claim is completely without merit. Vann objects to the following brief exchange during rebuttal closing argument of a five day trial:
 
 
 19
 Prosecutor: But [defense counsel] doesn't would know do [sic] that he wants to hide the ball, he wants to confuse you, he wants to have you going down these blind alleys.
 
 
 20
 He's trying to create that reasonable doubt, so that he can get his clients off. I don't fault him for that. That's his job. He's a good attorney, and Mr. Vann's got his money's worth in this case.
 
 
 21
 Defense Counsel: Your Honor, I object. These comments are totally improper.
 
 
 22
 The Court: Sustained. Sustained.
 
 
 23
 Prosecutor: He's a good attorney is permissible, Your Honor?
 
 
 24
 The Court: Yes.
 
 
 25
 Prosecutor: He's a good attorney. He's doing his job, I have no quarrel with that. But I ask you not to be fooled.
 
 
 26
 Even if we assume that these comments were improper, such isolated comments, coming in the course of a five day jury trial, do not render Vann's trial fundamentally unfair. See United States v. Clark, 982 F.2d 965, 968 (6th Cir.1993).
 
 
 27
 Vann claims that the mandatory sentencing scheme under which he was sentenced is unconstitutional. This Circuit has already rejected constitutional challenges to the mandatory minimum sentencing scheme and this panel has no authority to overrule a prior panel's decision, even if we were inclined to do so. See, e.g., United States v. Hill, 30 F.3d 48, 50 (6th Cir.1994) (rejecting claim that mandatory minimum sentences violate Eighth Amendment' prohibition against cruel and unusual punishment), cert. denied, 115 S.Ct. 350, and 115 S.Ct. 597 (1994); United States v. Gardner, 931 F.2d 1097, 1099 (6th Cir.1991) (rejecting claim that mandatory minimum sentences violate due process).
 
 
 28
 Vann does make one claim not previously addressed by this Court. He argues that the mandatory minimum sentencing scheme represents an unconstitutional bill of attainder. A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." Selective Serv. Sys. v. Minnesota Pub. Interest Research Group, 468 U.S. 841, 846-47 (1984) (quoting Nixon v. Administration of Gen. Servs., 433 U.S. 425, 468 (1977)). Vann's claim must fail for two reasons. First, a mandatory minimum sentence does not "legislatively determine guilt," but rather fixes a certain punishment upon a finding of guilt after trial. Second, this Court has held that Congress may constitutionally "prescribe mandatory sentences or otherwise constrain the exercise of judicial discretion." Gardner, 931 F.2d at 1099. Accordingly, we reject Vann's claim that his mandatory sentence is an unconstitutional bill of attainder.
 
 
 29
 Finally, Vann objects to the district court's refusal to vacate his sentence. However, Vann has not appealed this order, and we have no jurisdiction to hear this claim.
 
 
 30
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Vann claims that the kinds of drug transactions contained in his statement--infrequent sales of small amounts of cocaine--are not sufficiently similar to the purchase of one kilo of cocaine, and that therefore this evidence should not have been admitted. He relies on a Seventh Circuit case. United States v. Wright, 901 F.2d 68 (7th Cir.1990), as support for his argument. However, Wright involved the admission of other bad acts evidence under a theory of "identity," which requires a strong similarity between the charged crime and the prior misconduct. Id. at 69-70. Instead, in the case at bar the government sought to introduce evidence of Vann's prior misconduct theories of absence of mistake, intent, or knowledge to rebut Vann's "mere presence" defense. When offered to show absence of mistake, intent, or knowledge, the government need not establish a similar showing of strong similarity between the prior misconduct and the charged offense. See United States v. Delgado, 56 F.3d 1357, 1365-66 (11th Cir.1995), cert. denied, 116 S.Ct. 713 (1996)