**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Noah Wayne BENNETT, Defendant–
Appellant.**

**No. 91–6149.**

United States Court of Appeals,
Sixth Circuit.

Argued June 18, 1992.

Decided Sept. 21, 1992.

---

Randy W. Ream, Asst. U.S. Attorney (argued and briefed), Louisville, Ky., for plaintiff-appellee.

Ralph Beck (argued and briefed), Coffman & Beck, Bowling Green, Ky., for defendant-appellant.

Before: MERRITT, Chief Judge; and KEITH and RYAN, Circuit Judges.

MERRITT, Chief Judge.

The defendant, Noah Bennett, appeals his conviction and sentence for possessing a firearm and ammunition as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Bennett's main challenge is to his sentence. Under the United States Sentencing Guidelines the district court assessed a two level increase for obstruction of justice. The court also departed upward five months above the maximum time provided under the Guidelines. Bennett was sentenced to 51 months imprisonment and three years of supervised release. For the reasons that follow we affirm Bennett's conviction and the sentence.

## I.

On January 23, 1991, Sheriff James Pruitt received a radio dispatch stating that the defendant had been involved in a single-car accident on a private drive in rural Cumberland County, Kentucky. When Sheriff Pruitt arrived at the scene, he pulled his cruiser within 20 feet of the disabled car. At that distance he recognized the defendant. What is more, he saw that the defendant was holding a pistol. When the Sheriff identified himself, Bennett placed the gun on the floor of the car between his legs. The defendant was then arrested.

A search of the vehicle yielded a Smith & Wesson .357 caliber pistol beneath the driver's seat and an Arminius .38 caliber revolver on the passenger's seat. Both guns were loaded. In the back seat were several boxes of ammunition for a Remington .30–30 rifle and shells for a 12–gauge shotgun. A search of Bennett's person revealed that each pocket of an army field jacket contained a box of pistol ammunition. At least one box of ammunition fit the Smith & Wesson and another box fit the Arminius. Bennett was intoxicated at the time of his

arrest. The car was registered to Bennett's girlfriend, Carol Myers.

The defendant was charged with two counts of possession of a firearm by a convicted felon and one count of possession of ammunition by a convicted felon. At trial, Bennett claimed that the firearms belonged to Myers. Myers, who was driving at the time of the accident and who left Bennett with the car to go in search of help, testified that she had purchased the guns. She also said that she owned the army jacket, the ammunition in its pockets and the rifle ammunition in the back seat. Myers explained that Bennett was wearing her jacket when he encountered Sheriff Pruitt because she had mistakenly taken Bennett's jacket when she left the accident scene.

When Sheriff Pruitt took the stand, the defendant made an oral motion *in limine* to exclude mention of marijuana, drugs and a knife found during the search of the car. The court ruled that testimony concerning these items was irrelevant and thus inadmissible. Shortly thereafter, the Sheriff testified that "we got—got a knife from under on his seat...." Defense counsel moved for a mistrial. The court overruled the motion, noting that the witness had not been asked about the knife but rather "blurted that out." Oddly, the defense declined an offer by the court to admonish the jury to disregard the objectionable testimony.

The jury found Bennett guilty on all counts. Under the Sentencing Guidelines, the district court must calculate two variables: the defendant's offense level and his criminal history category. The two variables are then applied to the Guidelines sentencing table to establish the sentencing range. Bennett's base offense level was 12. The district court, following the recommendation of the probation office, assessed Bennett a two level increase for obstructing justice "for lying under oath." U.S.S.G. § 3C1.1. Bennett's total offense level, therefore, was 14. Section 4A1.1 of the Guidelines sets out the procedure for calculating a defendant's criminal history. Applying this procedure, the district court determined that Bennett's criminal history amounted to 21 points, which corresponds to criminal history category VI. This criminal history category coupled with the defendant's offense level yields a Guideline range of 37 to 46 months imprisonment.

At the sentencing hearing the Government asked for an upward departure on the grounds that Bennett "nearly qualified for sentencing under the Armed Career Criminal Act." The district court departed upward, but rejected the fifteen year sentence requested by the Government. Instead, the court enhanced Bennett's sentence five months. Thus, Bennett was sentenced to 51 months imprisonment and three years of supervised release. The court believed the upward departure was justified in light of Bennett's recent prior conviction and incarceration for the same offense. "[T]he present offense," the court explained, "is a repeat offense and is not adequately taken care of in the Sentencing Guidelines."

## II.

The defendant's challenges to his conviction merit but brief consideration. The defendant claims that the district court should have declared a mistrial when Sheriff Pruitt testified to evidence previously ruled inadmissible by the court. He also argues that the court erred by not allowing the defense an instruction on intoxication.

■ We review the district court's denial of Bennett's motion for mistrial for abuse of discretion. *United States v. Cordell*, 924 F.2d 614, 617 (6th Cir.1991). In denying the defendant's motion, the court stated, "I don't see that it's unduly prejudicial for a person to have a knife ... there is nothing inherently wrong with some kind of knife." If mention of the knife were indeed prejudicial, some, if not much, of that prejudice could be diminished through a curative instruction to the jury. The defendant, however, refused the court's offer to give such an instruction. In light of these circumstances, we hold that the district court did not abuse its discretion when it refused to declare a mistrial.

■ Nor did the district court err when it refused the defendant a jury instruction on intoxication. The trial court held that possession of a firearm by a convicted felon is a general intent crime to which voluntary intoxication is not a defense. The defendant argues that "it should be permissible to allow an intoxication defense, even to a general intent [crime] if the intoxication were so severe that the defendant did not even know he was in possession of a [firearm]." It is well settled that "[f]or general intent crimes, evidence of voluntary intoxication is not an acceptable method of negating the required intent." *United States v. Williams*, 892 F.2d 296, 303 (3d Cir.), *cert. denied*, 496 U.S. 939, 110 S.Ct. 3221, 110 L.Ed.2d 668 (1990). The defendant cites no authority for the proposition that the degree of intoxication somehow negates intent for a general intent crime. Nor is the defendant able to support his alternative argument that possession of a firearm by a convicted felon is a specific intent crime. We therefore affirm the defendant's conviction and turn to the sentencing issues.

### III.

#### A. *Obstruction of Justice*

■ Pursuant to § 3C1.1 of the Sentencing Guidelines, the district court increased by two points the defendant's offense level. The court believed that the defendant obstructed justice by lying under oath. Bennett denies perjuring himself. He contends that while the jury verdict demonstrates that the jury did not believe his testimony, the verdict does not mean that Bennett thereby obstructed justice.

More specifically, Bennett argues that no contradiction need arise between the jury verdict and his testimony. He states in his brief that, "[E]ven if the jury believed every word of [his] testimony," they could still have "believed that his conduct constituted possession of firearms," and so could still "have convicted him for possession of firearms." Consequently, Bennett asserts that the obstruction of justice enhancement would have a chilling effect on a defendant's constitutional right to go to trial and to insist on his innocence. He invokes application note 1 to § 3C1.1 of the Guidelines. That note reads:

> This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit guilt ... or refusal to enter a plea of guilty is not a basis for application of this provision. In applying this provision in respect to alleged false testimony or statements by the defendant, such testimony or statements should be evaluated in a light most favorably to the defendant.

The sentencing court retains considerable discretion in deciding whether a defendant's perjury amounts to an obstruction of justice under the Guidelines. The court's decision to assess or not to assess an enhancement under § 3C1.1 turns on whether such an enhancement will serve the ends of justice as articulated by Congress in 18 U.S.C. § 3553(a)(2) (outlining the factors to be considered in imposing a sentence under the Guidelines). On appeal, we review whether the district court abused its discretion in applying § 3C1.1.

The district court evaluated the evidence, made a credibility determination, and found that the defendant perjured himself while testifying under oath. The court observed that penalizing the defendant for perjury "was a policy which was in effect before the sentencing guidelines." The court believed it appropriate to apply that policy to the present case, and did so through § 3C1.1. After carefully reviewing Bennett's trial transcript we cannot say that the district court abused its discretion.

#### B. *Upward Departure*

Bennett also claims that the district court improperly departed upwards from the Guidelines' sentencing range. He asserts that his prior related convictions are adequately accounted for by his criminal history score of 21, which places him in a Criminal History Category of VI, the highest category under the Guidelines.

Congress has authorized departures from the sentencing ranges announced in the Guidelines only where "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b). Review of the sentencing transcript reveals that the district court departed from the Guidelines because it felt that the Guidelines do not adequately account for recidivism as acute as the defendant's. Its departure was clearly based on § 4A1.3 of the Guidelines, entitled "Adequacy of Criminal History Category (Policy Statement)." That policy statement provides that departure from the Guidelines is permissible if "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct *or the likelihood that the defendant will commit other crimes....*" U.S.S.G. § 4A1.3 ·(emphasis added). "A departure under this provision is warranted," if "after a review of all the relevant information, [the court] conclude[s] that the defendant's criminal history was significantly more serious than that of most defendants in the same criminal history category...." *Id.*

■ This circuit employs a three-step analysis for reviewing departures from the Sentencing Guidelines. *United States v. Rodriguez,* 882 F.2d 1059, 1067 (6th Cir. 1989), *cert. denied,* 493 U.S. 1084, 110 S.Ct. 1144, 107 L.Ed.2d 1048 (1990); *United States v. Joan,* 883 F.2d 491, 494 (6th Cir. 1989). First, we review de novo the circumstances relied upon by the district court in determining that the case is sufficiently unusual to warrant departure. Second, we examine for clear error whether the circumstances, if conceptually proper, actually exist in the case before the court. Third, we determine whether the direction and degree of departure is reasonable. *Rodriguez,* 882 F.2d at 1067 (citing *United States v. Diaz–Villafane,* 874 F.2d 43, 49 (1st Cir.), *cert. denied,* 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989)); *Joan,* 883 F.2d at 494 (same).

The defendant notes that concerns about recidivism already have been factored into the Guidelines' criminal history scoring system. For example, a defendant's criminal history score is increased for every prior sentence of imprisonment. U.S.S.G. § 4A1.1(a)–(c). Moreover, § 4A1.1 provides for the possibility of enhanced punishment where criminal activity follows on the heels of prior criminal conduct. Specifically, subparts (d) and (e) of § 4A1.1 direct the sentencing court to increase a defendant's criminal history score if the defendant committed the instant offense while under a criminal justice sentence or within two years after release from imprisonment. The defendant argues that because the Guidelines already account for recidivist tendencies, departing upward from the Guideline range for reasons of recidivism is improper under § 3553(b).

■ The strength of this argument lies in its recognition that upward departures from the Guidelines for reasons of recidivism should be rare events. By and large, the Guidelines account for and punish prior criminal behavior. However, as noted above, § 4A1.3 envisions that there will be occasions where a defendant's criminal history is significantly more serious than reflected by his criminal history category. Both the policy statement and the commentary to that policy statement explicitly refer to the "likelihood of recidivism" as a legitimate factor to be considered when determining whether departure is warranted. U.S.S.G. § 4A1.3. Such references suggest that while the criminal history scoring system accounts for a "general" recidivist tendency amongst criminal defendants, certain defendants pose a significantly greater recidivist risk. These rampant recidivists, the Sentencing Commission tells us, are proper candidates for upward departures. Because the district court clearly identified the unusually high likelihood of recidivism as its ground for departing from the Guideline range, we hold that this case fits within that class of cases that are sufficiently unusual to warrant departure.

**310**

We next examine whether the circumstances warranting departure actually exist in this case. Bennett's Presentence Report reveals that Bennett is a 39 year-old male with a 7th grade education and a long list of prior convictions. In addition to a variety of state convictions for theft, trespass, escape from custody, driving while intoxicated, and marijuana possession and cultivation—all of which are reflected in Bennett's criminal history—Bennett has three prior federal convictions for illegal possession of firearms. At age 22 Bennett was convicted and incarcerated for 60 days for possessing an unregistered sawed-off shotgun. This conviction is not included in the defendant's criminal history because the sentence was imposed more than ten years prior to the instant offense. U.S.S.G. § 4A1.2(e)(3). At age 33 Bennett was convicted for possessing a loaded firearm within a national park. And in 1989, at age 37, Bennett was convicted and sentenced to 24 months imprisonment and 3 years supervised release for possessing a firearm as a convicted felon. Bennett was released from federal custody for that offense on January 14, 1991—nine days before committing the same and instant offense. Bennett's background also includes a fourth weapons offense. In 1981 Bennett was convicted in state court of criminal trespass and assault after entering a Kentucky residence through a window and shooting an individual with a .22 caliber rifle. In all, Bennett has been tried eight times in the past eighteen years for over a dozen offenses, excluding the present case. He has been sentenced to more than 12 years behind bars, has served nearly 8 of those years, and has escaped from prison once.

Troubled by the defendant's recidivism, the district court departed upward from the maximum sentence provided by the Guidelines. We hold that the district court was not clearly erroneous in finding that the facts of this case warrant departure under § 4A1.3. *See United States v. Belanger*, 892 F.2d 473 (6th Cir.1989) (approving an upward departure where defendant's criminal history score "greatly exceeded the points necessary for inclusion in category VI", and where the district court found that the defendant was "simply out of control.").

We turn now to the final step of our three-part analysis. The Guidelines established a sentencing range for Bennett of 37 to 46 months. The court sentenced Bennett to 51 months, a term approximately 10 percent greater than the maximum provided under the Guidelines. We find this five month departure reasonable in light of the circumstances of this case. We therefore affirm the defendant's sentence.

### IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.