106 F.3d 402
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jerome MADDOX, Defendant-Appellant.
 No. 95-2022.
 United States Court of Appeals, Sixth Circuit.
 Jan. 15, 1997.
 
 Before: JONES, SILER and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendant, Jerome Maddox, was convicted of conspiring to possess marijuana with the intent to distribute and was sentenced to 14 years in prison. On appeal, he challenges the district court's failure to suppress the fruits of a search, the court's failure to suppress his incriminating statements, and its admission into evidence of his threat to kill a government witness. He also appeals his sentence, arguing that it was based on an unsupportable quantity of marijuana and an erroneous finding that he obstructed justice. We find no reversible error, and we therefore affirm the judgment of the district court.
 
 I. FACTUAL BACKGROUND
 
 2
 In October 1994, Jerome Maddox was indicted with 30 co-defendants for conspiring to possess marijuana with the intent to distribute. Following his conviction by a jury, the district court sentenced Maddox to 168 months in prison. The evidence at trial indicated that Maddox was the Detroit-area marijuana distributor for a marijuana trafficking organization and that co-defendant Richard Sumpter was Maddox's California supplier during a large part of 1993. Sumpter testified about his many trips to Detroit, where he unloaded shipments of marijuana at the defendant's home and his stash house, and collected the proceeds from Maddox's sales. Some of these events were witnessed by an undercover agent for the government. The prosecution also introduced evidence obtained from a search of Maddox's home and stash house. During the execution of a warrant to search Maddox's home, Maddox made several incriminating statements and consented to the search of his stash house. The evidence obtained in the searches included over $250,000 in cash, marijuana, drug trafficking records, and firearms.
 
 II. ANALYSIS
 
 3
 A. Failure to suppress evidence. The defendant argues that the district court erred by refusing to suppress the fruits of the searches of Maddox's home and stash house, first, because the warrant was stale and, second, because of the absence of probable cause. The affidavit supporting the warrant describes Maddox's drug trafficking activities until May 5, 1994, 18 days before the execution of the search. Maddox argues that because the affidavit does not provide specific information that he continued to sell or possess marijuana after May 5, and that because the information in the affidavit seemed to indicate that Maddox was "settling his account" with Sumpter, the warrant was stale.
 
 
 4
 As Maddox acknowledges, United States v. Canan, 48 F.3d 954, 958-9 (6th Cir.1995) cert. denied, 116 S.Ct. 716 (1996), aptly describes this circuit's law:
 
 
 5
 In determining whether a search warrant is supported by probable cause, a magistrate must employ a flexible, totality of the circumstances standard. Illinois v. Gates, 462 U.S. 213, 233, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983). A reviewing court, in turn, must merely "determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." Massachusetts v. Upton, 466 U.S. 727, 728, 104 S.Ct. 2085, 2085, 80 L.Ed.2d 721 (1984).... As this Court recognized in [United States v. Henson, 848 F.2d 1374, 1382 (6th Cir.1988), cert. denied, 488 U.S. 1005 (1989) ], "the function of a staleness test in the search warrant context is not to create an arbitrary time limitation within which discovered facts must be presented to a magistrate." ... Rather, the existence of probable cause is a function of "the inherent nature of the crime." ... "[I]f an affidavit recites activity indicating protracted or continuous conduct, time is of less significance." ... Moreover, although a significant period of time may have elapsed since a defendant's last reported criminal activity, it may be properly inferred that indicia of criminal activity will be kept for some period of time.
 
 
 6
 (Citations omitted.)
 
 
 7
 In the lengthy affidavit attached to the warrant, Drug Enforcement Agent Mark Thomas described a course of marijuana trafficking involving Maddox as Sumpter's Detroit distributor beginning in late 1992. The affidavit described Maddox's relationship with several co-defendants. The last date mentioned is May 5, 1994, when Maddox left his home and went directly to a gas station, where he delivered 136 pounds of marijuana and $46,000 to Sumpter's wife and to the affiant, who was acting undercover. According to the affiant, Sumpter stated that he made at least four deliveries of marijuana to Maddox's home, that Maddox kept records at his home, and that Sumpter had picked up drug proceeds from Maddox's home. We conclude that, based on evidence of this continuing course of conduct, the officers had probable cause for the search 18 days after the date of the last activity mentioned in the affidavit and one day after the warrant was issued.
 
 
 8
 The defendant also challenges the reasonableness of the search by arguing that the officers who executed the warrant searched in "flagrant disregard of the limitations of the warrant," seizing, for example, personal photographs, papers regarding the estate of Maddox's mother-in-law, funeral home receipts, high school course catalogs, birth certificates, health records of Maddox's son, and a college transcript. This court has held, however, that although "flagrant disregard for the limitation of a search warrant might make an otherwise valid search an impermissible general search requiring the suppression of all evidence seized during the search," items covered by the search will be deemed admissible "[a]bsent flagrant action." United States v. Lambert, 771 F.2d 83, 93 (6th Cir.1985), cert. denied, 474 U.S. 1034 (1985). Because the scope of the permissible search in this case included photographs of conspirators, financial documents, identification, and other indicia of drug dealing, the seized items cannot be said to have been taken in flagrant violation of the search warrant. Although they were later determined to be irrelevant to the investigation, the evidentiary value of these items may not have been readily apparent at the time of their seizure. Therefore, the court did not err by refusing to suppress the fruits of the search.
 
 
 9
 B. Failure to suppress the defendant's statements. Maddox alleges that the coercive conduct and threats of the officers who executed the search of his home prompted his incriminating statements and admissions, as well as his consent to the search of his stash house, thus violating his right to due process. He insists that his statements, as well as the fruits of the search of the stash house, should therefore be considered involuntary and should be suppressed. The defendant claims that agents threatened to hold him without bail, to arrest his mother, to arrest his wife at work, and to place his children in foster care if he did not cooperate. He alleges that agents denied his request for counsel, and did not inform him of his Miranda rights until about an hour into the search of his mother's half of the duplex where he lived. Furthermore, Maddox claims that during the arrest and search, an agent threatened his mother with arrest; when she had breathing difficulty, the threatening agent allegedly refused to allow her to get her nitroglycerine, but another agent intervened to help her. Maddox claims that he cooperated with the agents only after his mother told him that she would be arrested.
 
 
 10
 Agent Thomas, however, denied threatening the defendant or members of his family with prosecution. He testified that he read Maddox his Miranda rights. He admitted telling Maddox that he intended to seek an arrest warrant for Maddox's mother, but only after Maddox asked what would happen to her. He also admitted telling Maddox's mother that he intended to seek an arrest warrant for her.
 
 
 11
 The district court, after an evidentiary hearing, found that the agents did not make the threatening statements alleged. This court has held that "[i]n determining the voluntariness of a confession, a reviewing court will not disturb the trial court's findings concerning specific events surrounding the confession unless clear error appears on the record." United States v. Wrice, 954 F.2d 406, 410-11 (6th Cir.) (per curiam), cert. denied, 504 U.S. 945 (1992). Because the district court did not clearly err by crediting the testimony of the agents, the district court's decision not to suppress the incriminating statements or the fruits of the search of the stash house must be sustained.
 
 
 12
 C. Admissibility of the defendant's threat. Maddox argues that the court's admission of evidence that he threatened to kill Sumpter and his wife was an abuse of discretion. Maddox reportedly said to him: "Good luck, [you're] going to need it. [I'm] going to kill [you] and [your] asshole wife." Although Sumpter was the only one who testified to Maddox's actual words, which Maddox denied, two marshals acknowledged seeing Maddox say something to Sumpter. The trial court credited Sumpter's testimony.
 
 
 13
 First, the defendant argues that the threat was not relevant because it did not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. The defendant claims that the threat reflected only on his own bias, which was irrelevant because he did not testify. Secondly, Maddox claims that, if relevant, the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. Citing United States v. Schrock, 855 F.2d 327, 335 (6th Cir.1988), he notes that evidence is unfairly prejudicial if it "tends to suggest decision on an impermissible basis."
 
 
 14
 As the government points out, however, evidence of a threat is probative of guilt. This court has held that "spoliation evidence, including evidence that defendant attempted to bribe and threatened a witness, is admissible to show consciousness of guilt." United States v. Mendez-Ortiz, 810 F.2d 76, 79 (6th Cir.1986), cert. denied, 480 U.S. 922 (1987). In this case, the threat was made during a break in Sumpter's testimony. Under the circumstances, it is clear that Maddox's threat constituted an attempt to persuade Sumpter to change his testimony. Hence, Mendez-Ortiz's logic applies, and the threat must be considered relevant to the defendant's consciousness of guilt.
 
 
 15
 With regard to the evidentiary ruling that admission of the threat did not violate Fed.R.Evid. 403, we review the district court's decision for abuse of discretion, viewing the evidence in the light most favorable to the proponent by maximizing its probative value and minimizing its prejudicial effect. United States v. Bond, 12 F.3d 540, 567 (6th Cir.1993). In this case, the evidence of Maddox's threat was not unfairly prejudicial. It was not admitted to impeach Maddox's credibility, and hence did not tend to establish guilt on an impermissible basis.
 
 
 16
 D. The quantity of marijuana for sentencing purposes. At Maddox's sentencing hearing, the district court relied on the quantities of drugs listed in the government's memorandum in opposition to the presentence report. The court then estimated the amount of marijuana brought to Maddox almost monthly between April 1993 and January 1994, erring on the conservative side of each estimate, and concluded that Maddox was responsible for 1158 kilograms of marijuana. This amount was far less than the 1662 to 2433 kilograms for which the presentence report suggested he was accountable.
 
 
 17
 Maddox argues that the figures taken from the government's sentencing memorandum were inadequately explained. He contends that Sumpter's trial testimony suggests only 1234 to 1289 kilograms, and that because the district court explicitly excluded one delivery included in this amount, only 977 of that amount should be attributable to Maddox. This quantity would reduce Maddox's base offense level by two points. In the alternative, Maddox suggests that the court base the drug quantity on the amount of cash found, which would result in a finding of only 324 kilograms, and a considerably lower sentence.
 
 
 18
 A district court's decision as to the amount of drugs for which a defendant is responsible will not be overturned unless it is clearly erroneous. United States v. Ward, 68 F.3d 146, 149 (6th Cir.1995), cert. denied, 116 S.Ct. 1028 (1996). In estimating the amount of drugs, the sentencing court should err on the side of caution and hold a defendant responsible only if it is more likely than not that the defendant was responsible for at least that amount of drugs. The court's determination of quantity must have "some minimum indicium of reliability beyond mere allegation," and its approximation must be supported by competent evidence in the record. Id. We have held that a district court may rely on hearsay information included in a presentence report, as long as the information has sufficient indicia of reliability. United States v. Silverman, 976 F.2d 1502, 1513 (6th Cir.1992) (en banc), cert. denied, 507 U.S. 990 (1993).
 
 
 19
 The drug quantity upon which Maddox's sentence was based appears to have sufficient indicia of reliability. The amounts in the government's memorandum were taken from Sumpter's testimony at an earlier trial and from the government's debriefing of Sumpter, and were also estimates based on quantities seized from duffle bags. The court was not clearly erroneous for relying on this information.
 
 
 20
 E. Enhancement of sentence for obstruction of justice. Maddox also appeals the validity of the two-point sentencing enhancement he received for obstruction of justice after the court found that he threatened to kill Richard Sumpter and his wife during a break in Sumpter's testimony. The defendant argues that Sumpter was a "situational liar" and that even if the threat occurred, it was empty because Sumpter was jailed and his wife was hidden. Moreover, Maddox insists that his words were an angry reaction to Sumpter's testimony, not an attempt to influence testimony.
 
 
 21
 This court reviews applications of the sentencing enhancement for abuse of discretion. United States v. Bennett, 975 F.2d 305, 308 (6th Cir.1992). The Sentencing Guidelines state that
 
 
 22
 [i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.
 
 
 23
 USSG § 3C1.1. First among the examples of obstruction is "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." USSG § 3C1.1 comment. n. 3(a). Maddox's conduct, as found by the district court, clearly fits this guideline and justifies the enhancement. See United States v. Brown, 946 F.2d 1191, 1197 (6th Cir.1991). The district court, therefore, did not abuse its discretion by enhancing Maddox's sentence for obstruction of justice.
 
 
 24
 For the reasons set out above, we AFFIRM the judgment of the district court.