107 F.3d 12
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Frederick IRVIN, Andre Miller, Defendants-Appellants.
 Nos. 95-1823, 95-1895.
 United States Court of Appeals, Sixth Circuit.
 Feb. 05, 1997.
 
 Before: JONES, SILER, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendants appeal their convictions entered on guilty pleas for their respective roles in a crack cocaine distribution conspiracy. Defendant Miller pleaded guilty to distribution of crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Count 5 of the Superseding Indictment). Defendant Irvin pleaded guilty to conspiracy to possess with intent to distribute crack cocaine in violation of 21 U.S.C. § 846, and carrying or using a firearm during a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1) (Counts 1 and 39). Miller was sentenced to 57 months imprisonment and 3 years supervised release. Irvin was sentenced to 40 years imprisonment and 10 years supervised release. For the following reasons we affirm in part, and remand in part, Defendant Miller's conviction and sentence. We affirm, in its entirety, Defendant Irvin's conviction and sentence.
 
 I.
 
 2
 On October 19, 1994, Defendants Frederick Irvin and Andre Miller were arrested and charged with numerous drug trafficking violations in relation to a crack cocaine distribution conspiracy. Both Defendants were detained. On November 10, 1994, a 39 count indictment was returned against Irvin, Miller and 18 other defendants (who are not the subject of this appeal).
 
 
 3
 On November 22, 1994, Miller was released on an $100,000 unsecured bond. The bond stated that Miller would reside at the Arete Center, a halfway house, in Saginaw, Michigan. On January 13, 1995, Miller was arrested and detained. In an order dated January 19, 1995, Miller was ordered detained until trial. Irvin was continuously detained during this time.
 
 
 4
 Pursuant to a Rule 11 plea agreement, Miller pleaded guilty to distribution of crack cocaine, in violation of 21 U.S.C. § 841(a)(1). The remaining charges against Miller were dropped. Miller was sentenced to 57 months imprisonment and 3 years supervised release. In addition, he was ordered to pay a $500.00 fine and a $50.00 special assessment.
 
 
 5
 Pursuant to a Rule 11 plea agreement, Irvin pleaded guilty to conspiracy to possess with intent to distribute crack cocaine in violation of 21 U.S.C. § 846. Irvin also pleaded guilty to carrying and using a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1). The remaining charges were dropped. Irvin was sentenced to 40 years imprisonment for the conspiracy charge, with a five year mandatory consecutive sentence for the firearm charge. He was also sentenced to 10 years supervised release. In addition, Irvin was assessed a $15,000 fine and a $50.00 special assessment.
 
 II.
 
 6
 Miller presents two issues on appeal. The first issue is whether the district court erred in making an upward increase in Miller's base offense level for obstruction of justice pursuant to § 3C1.1 of the Sentencing Guidelines. The second issue is whether the district court erred in refusing Miller's request to grant an offense level reduction for "super acceptance" of responsibility pursuant to § 3E1.1(b) of the Sentencing Guidelines.
 
 
 7
 Irvin raises three issues on appeal. The first issue is whether the district court erred in making an upward adjustment in Irvin's sentence of two levels for his aggravating role in the conspiracy under § 3B1.1(a) of the Sentencing Guidelines. The second issue is whether the district court erred in sentencing Irvin based on the Sentencing Guidelines for crack cocaine, rather than powdered cocaine. The third issue is whether Irvin should be permitted to withdraw his guilty plea on the firearms charge in light of the Supreme Court's decision in Bailey v. United States, 116 S.Ct. 501 (1995).
 
 A.
 1.
 
 8
 We review the district court's decisions concerning a base offense level enhancement for obstruction of justice under the abuse of discretion standard. United States v. Medina, 992 F.2d 573, 591 (6th Cir.1993), (citing United States v. Bennett, 975 F.2d 305, 308 (6th Cir.1992)), cert. denied, 510 U.S. 1109 (1994). "Sentencing courts retain discretion in deciding whether a defendant's actions constitute an obstruction of justice punishable under the guidelines, and we review such decisions under an abuse of discretion standard." Id.
 
 
 9
 Miller argues that the district court erred in increasing his base offense level for obstruction of justice. The district court concluded that Miller had obstructed justice by sending a threatening letter to a co-defendant who Miller believed was testifying for the government.
 
 
 10
 In January 1995, Gerald Lawson, Miller's co-defendant, received a letter threatening that harm would come to Lawson or his family if he testified against the sender of the letter. The letter was unsigned. Lawson maintained that Miller had sent the letter because it referred to a "secret family" of which few people were aware. Lawson asserted that Miller was one of the few people who knew of this secret family.
 
 
 11
 At Miller's bond review hearing held on January 18, 1995, the district court concluded that based on the evidence Miller was the author of the letter and ordered him detained pending trial. Specifically, the district court concluded: 1) that the letter was meant to threaten Lawson; 2) Miller has access to the typewriters used to write the letter; and 3) Miller was one of few people who had knowledge of Lawson's second family. J.A. at 378-80. Based on these findings, Miller's bond was revoked. As a result of the district court's finding in the bond review hearing that Miller had written a threatening letter, Miller's Presentence Investigation ("PSI") report suggested an addition to Miller's base offense level of two points.
 
 
 12
 At Miller's sentencing hearing, the district court found that Miller typed and mailed the threatening letter to Lawson because of Miller's belief that Lawson was going to cooperate with the government. The district court then determined that Miller's sending of the threatening letter was an obstruction of justice and adopted the recommendation of the PSI report and increased Miller's base offense level by two points.
 
 
 13
 Miller contends that because the threatening letter did not relate to the case at issue, the district court should not have added an additional two points for the obstruction of justice. The letter sent to Lawson related to the charges for which Miller was being sentenced. See United States v. Horry, 49 F.3d 1178, 1180-81 (6th Cir.1995) (holding that for actions to be punishable "the obstruction must occur solely with respect to the offense of conviction.") Lawson was also indicted in the conspiracy at issue. Miller's sending of the threatening letter related to the charges before the district court. The district court did not abuse its discretion in increasing Miller's base offense level by two points for obstruction of justice. " 'Once a sentencing court makes a factual finding as to the applicability of a particular adjustment provision, the court has no discretion, but must increase the offense level by the amount called for in the applicable provision.' " Medina, 992 F.2d at 591 (quoting United States v. Feinman, 930 F.2d 495, 500 (6th Cir.1991)).
 
 
 14
 Miller also contends that the two-level obstruction adjustment constituted impermissible double punishment under the United States Constitution. In support of this argument, Miller cites United States v. Perry, 30 F.3d 708 (6th Cir.1994). However, Perry is factually and legally distinct. In the instant case, unlike in Perry, there has been no underlying obstruction of justice nor contempt conviction prior to the obstruction enhancement. Miller's bond was merely revoked partly on the basis of the threatening letter that later served to enhance his sentence. Moreover, the fact that Miller's bond was revoked for several reasons in addition to the threatening letter further buttresses the conclusion that he was not punished twice for the same conduct.
 
 
 15
 Finally, the most important difference between the instant case and Perry is that Miller will receive credit toward his drug sentence for the period of his pre-trial detention. 18 U.S.C.A. § 3585(b)(1); see also Reno v. Koray, 115 S.Ct. 2021, 2023 (1995). Therefore, Miller's pre-trial release revocation in no way extends his imprisonment. Consequently, Miller's double punishment argument is without merit.
 
 2.
 
 16
 Miller's second argument on appeal is that the district court erred in refusing to grant him an offense level reduction for "super acceptance" of responsibility as allowed by section 3E1.1(b) of the Sentencing Guidelines. The district court's decision to grant or deny a downward departure under section 3E1.1 of the Sentencing Guidelines is reviewed for clear error. United States v. Wilson, 878 F.2d 921, 923 (6th Cir.1989).
 
 
 17
 Section 3E1.1(b) of the Sentencing Guidelines allows a defendant who has accepted responsibility for his offense to receive a decrease in offense level by one additional point for "super acceptance" of responsibility if the offense level is greater than 16 prior to any reduction for acceptance of responsibility, the defendant has qualified for a reduction under 3E1.1(a), and the defendant has either provided the government with complete information concerning the defendant's involvement in the offense or notified the authorities of an intent to plead guilty. U.S.S.G. § 3E1.1(b). This base offense level reduction is in addition to the two-level reduction allowed by section 3E1.1(a) of the Sentencing Guidelines for acceptance of responsibility.
 
 
 18
 The district court determined that Miller was not entitled to this reduction because of his base offense level enhancement for obstruction of justice. The application notes, which accompany section 3E1.1, state that ordinarily a defendant who has received an enhancement for obstruction of justice is not entitled to a reduction for acceptance of responsibility unless extraordinary circumstances exist. United States Sentencing Guidelines Manual § 3E1.1, Application Note 4 (1995). The district court declined to give Miller an additional one point reduction. The sentencing judge stated his reason for declining to give the additional one point reduction as follows: "[I]'m not overwhelmingly persuaded about the suitability of even the first two levels of acceptance of responsibility." Sentencing Hearing, July 6, 1995, Joint Appendix at 501.
 
 
 19
 We conclude that the district court erred in declining to determine whether Miller was entitled to an additional one point reduction under section 3E1.1(b). The district court gave Miller a two-level reduction for acceptance of responsibility although Miller had also received a sentence level enhancement for obstruction of justice. This infers that the district court determined that this case was an extraordinary circumstance in which the defendant was entitled to both an obstruction of justice enhancement and an acceptance of responsibility reduction, as discussed in Application Note 4. As such, the district court should have also determined whether Miller was entitled to the additional point reduction for "super acceptance" of responsibility. The district court's refusal to determine whether Miller qualified for an additional point reduction for "super acceptance" of responsibility was clearly erroneous. Miller met the requirements for a determination of whether he qualified for an additional point reduction because prior to his base offense level reduction under 3E1.1(A), his offense level was greater than level 16.
 
 B.
 
 20
 Irvin raises three arguments on appeal. He contends that the district court erred in granting an upward increase in his base offense level for an aggravating role in the conspiracy. He also maintains that the district court erred in using disparate requirements under the Sentencing Guidelines for crack cocaine and powdered cocaine. In addition, Irvin asserts that he should be permitted to withdraw his guilty as a result of the Supreme Court's decision in Bailey v. United States, 116 S.Ct. 501 (1995).
 
 1.
 
 21
 Each of the issues raised by Irvin involve legal conclusions made in relation to the application of the Sentencing Guidelines. Legal conclusions regarding the Sentencing Guidelines are reviewed de novo. United States v. Garner, 940 F.2d 172, 174 (6th Cir.1991). Irvin maintains that the district court erred in making an upward adjustment of two levels for his aggravating role in the conspiracy. A defendant's base offense level can be increased by two points if the court finds that the defendant was the organizer or leader in a criminal activity that involved five or more participants. U.S.S.G. § 3B1.1(a). Irvin maintains that he was not a leader of the conspiracy because he did not "organize or initiate the scheme, recruit accomplices, control distribution of the profits, exercise decision making authority over his co-conspirators, or lead or control any members of the conspiracy." Irvin Br. at 6. However, Irvin's testimony discounts this assertion.
 
 
 22
 At Irvin's plea hearing on December 12, 1994, Irvin admitted to being a leader of the conspiracy. He admitted that he was near the top of the conspiracy. Irvin acknowledged that several people distributed crack for him. He conceded that five people were dealing crack cocaine with him. The Sentencing Guidelines do not require that the defendant directly supervise five of the activity's participants, but merely that the activity involve five or more participants. United States v. Bashara, 27 F.3d 1174, 1184 (6th Cir.1994), cert. denied, 115 S.Ct. 909 (1995).
 
 
 23
 During Irvin's sentencing hearing, the issue of whether he was a leader of the conspiracy was designated as a controverted item. Irvin's attorney waived his objection to the characterization of Irvin as a leader of the conspiracy stating, "it was a slim or loose conspiracy but ... he was a major leader." Sentencing Hearing, July 6, 1995, Joint Appendix at 314.
 
 
 24
 Irvin admitted his leadership role in the conspiracy on two separate occasions. He admitted such a supervisory role at his plea hearing. His attorney waived his objection to the characterization of Irvin as a leader at the sentencing hearing. Irvin did not contest the determination that he was a leader in the conspiracy. Irvin's argument that the district court erred in granting an upward adjustment for aggravating role in the conspiracy is without merit.
 
 2.
 
 25
 Irvin's second argument on appeal is that the drug quantity determinations for crack cocaine and powdered cocaine should be scored the same. However, the Sentencing Guidelines differentiate between the drug quantity amounts for crack cocaine and powdered cocaine; therefore, Irvin's argument on this issue is unpersuasive. See United States v. Smith, 73 F.3d 1414, 1417-18 (6th Cir.1996) (rejecting a constitutional challenge to the 100:1 ratio for crack cocaine and powder cocaine under section 2D1.1 of the Sentencing Guidelines).
 
 3.
 
 26
 Irvin's third argument on appeal is that he should be permitted to withdraw his guilty plea for carrying and using a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1), as a result of the Supreme Court's decision in Bailey v. United States, 116 S.Ct. 501 (1995). In Bailey, the Supreme Court clarified the requirements for a conviction under the "use" prong of 924(c)(1). Id. at 505-09. The government contends that the Bailey decision notwithstanding, Irvin's conviction should be allowed to stand because he could be convicted under the "carry" prong of 924(c)(1). In order to be convicted of carrying a firearm during a drug trafficking offense in violation of 924(c)(1), the firearm must be immediately available for use. United States v. Riascos-Suarez, 73 F.3d 616, 623 (6th Cir.), cert. denied, 117 S.Ct. 136 (1996). Following Irvin's arrest a 9 millimeter Smith & Wesson handgun was found under the seat of the car that Irvin was driving before his arrest. This handgun was within Irvin's reach and therefore immediately available for his use. We uphold Irvin's conviction under the "carry" prong of 924(c)(1).
 
 III.
 
 27
 Based on the foregoing, we AFFIRM Miller's conviction and sentence on the obstruction of justice issue. We REMAND to the district court to determine whether Miller is entitled to a base offense level reduction of one point for "super acceptance" of responsibility.
 
 
 28
 We AFFIRM Irvin's conviction and sentence in its entirety.