**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jerry Franklin PARKS, Defendant–Appellant.**

**No. 00–5928.**

United States Court of Appeals, Sixth Circuit.

March 4, 2002.

* The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio sitting by designation.

Before BOGGS and RALPH B. GUY, JR., Circuit Judges, and CARR, District Judge.*

## OPINION

CARR, District Judge.

Defendant-appellant Jerry Franklin Parks ("Parks") appeals the final judgment of June 30, 2000, finding him guilty of possession of a firearm by a convicted felon on March 28, 1998, and possession of a firearm and ammunition by a convicted felon on August 26, 1998, in violation of 18 U.S.C. § 922(g)(1). For the following reasons, we AFFIRM the judgment of the district court.

## BACKGROUND

On November 17, 1998, a federal grand jury returned a four-count indictment against Parks. J.A. at 8–10. Count One charged Parks with possession of a firearm by a convicted felon on March 28, 1998, in violation of 18 U.S.C. § 922(g)(1). *Id.* at 8. Count Two charged Parks with possession of ammunition by a convicted felon on August 19, 1998, in violation of 18 U.S.C. § 922(g)(1). *Id.* at 8–9. Counts Three and Four charged Parks with possession of a firearm and ammunition by a convicted

felon on August 26, 1998, in violation of 18 U.S.C. § 922(g)(1). *Id.* at 9–10. The indictment also alleged that Parks was an armed career criminal, as defined in 18 U.S.C. § 924(e), for sentencing purposes. *Id.* at 8.

Count One resulted from an incident on March 28, 1998, when Parks's son brought a gun into the home of a neighbor, Gretta Cline. *Id.* at 139. When Parks shortly thereafter came to Cline's home, Cline informed him about the gun. *Id.* at 142. Parks took the gun and left Cline's home. *Id.* at 143. On March 31, Parks called United States Probation Officer Trine Robinette, who was supervising Parks's supervised release, telling Robinette that Parks saw his son play with a gun and took the gun from his son. *Id.* at 120–21. Parks also told Robinette that he saw a clip and butcher knife in his driveway. *Id.* at 120–21. Parks told Robinette that Parks took the gun and clip to a friend's home. *Id.* at 121.

Count Two was based on the arrest of Parks with a round of ammunition in his possession on August 19, 1998. *Id.* at 45.

Counts Three and Four arose from a search on August 26, 1998, by agents of the Bureau of Alcohol, Tobacco, and Firearms ("ATF") of Parks's residence pursuant to a search warrant. *Id.* at 47–49. The agents seized reloading equipment, primer shells, and .44–caliber cartridges from Parks's basement. *Id.* at 50. On searching Parks's yard, the agents found a trail leading to a doghouse on Cline's property. *Id.* at 55–56. An expert in tracking saw evidence that someone walked from the doghouse to Parks's residence. *Id.* at 104. The agents found a loaded .38–caliber Smith and Wesson revolver under the doghouse in a plastic bag. *Id.* at 56. In

---

* The Honorable James G. Carr, District Judge, United States District Court for the Northern District of Ohio, sitting by designation.

addition to this evidence, Cline testified that she never had seen the firearm under the doghouse in her yard and that she saw Parks near the doghouse.

A jury trial was held on October 12–13, 1999, and the jury found Parks guilty on Counts One. Three, and Four of the indictment and not guilty on Count Two. *Id.* at 33–34. On June 30, 2000, the district court sentenced Parks to 250 months as to Counts One, Three, and Four, to run concurrently. *Id.* at 12. The court also imposed five years of supervised release for each count, to run concurrently. *Id.* at 13.

## DISCUSSION

Parks challenges his convictions and sentence on five grounds: 1) there was insufficient evidence to find that he was guilty of being a felon in possession of a .38–caliber revolver and .38–caliber ammunition on August 26, 1998; 2) there was insufficient evidence to find he was guilty of being a felon in possession of a .22–caliber pistol on March 28, 1998; 3) he was entitled to a mistrial when he learned at trial that the lead government witness was promised he would not be prosecuted for his offense; 4) the district court should not have given him a two-level enhancement for use of a stolen weapon pursuant to the United States Sentencing Guidelines; and 5) the district court should have calculated Parks's past three sentence as one related sentence because they were served concurrently.

### I. Possession of a Firearm and Ammunition on August 26, 1998

Parks argues there was insufficient evidence to support his conviction and sentencing for possession of a firearm and ammunition on August 26, 1998, and the district court erred by denying his motion for judgment of acquittal. The government argues that a rational trier of fact could find there was sufficient evidence to find Parks guilty.

This court reviews a district court's denial of a motion for judgment of acquittal de novo. *United States v. Canan,* 48 F.3d 954, 962 (6th Cir.1995). We must affirm the district court denial "if the evidence, viewed in the light most favorable to the government, would allow a rational trier of fact to find the defendant guilty beyond a reasonable doubt." *Id.* (citing *United States v. Montgomery,* 980 F.2d 388, 393 (6th Cir.1992)). Witness credibility generally is within the province of the jury, not the appellate court. We do not weigh evidence or consider witness credibility in addressing sufficiency of the evidence issues. *United States v. Hilliard,* 11 F.3d 618, 620 (6th Cir.1993) (citing *United States v. Evans,* 883 F.2d 496, 501 (6th Cir.1989)).

■ To be convicted of possession of a firearm under 18 U.S.C. § 922(g), the government was required to prove: 1) Parks possessed a firearm and ammunition; 2) the firearm and ammunition affected commerce; and 3) Parks previously was convicted of a felony. The parties stipulated to the second and third elements; only the issue of possession was disputed.

■ Parks contends that mere proximity to a firearm does not establish possession. Parks contends that: 1) the firearm did not contain fingerprints; 2) Parks's home actually belonged to his father-in-law; 3) Parks was not living on the property at the time of the search; 4) no one knew the last time Parks was on the premises; 5) the "trail" leading to the location of the firearm and ammunition was only tall grass and weeds bent in a specific direction; 6) the trail appeared to be forty-eight hours old and Parks was in jail during that period; 7) partial fingerprints on the shells were not Parks's fingerprints; 8) access to the doghouse was not restrict-

ed; 9) the tracking expert admitted that the trail could have been made by someone coming from any direction; and 10) Cline could have seen someone other than Parks near the doghouse.

The government contends that possession can be actual or constructive and can be proved by direct or circumstantial evidence. The government argues that the circumstantial evidence proves Parks knowingly possessed a firearm and ammunition. The government contends: 1) the firearm and ammunition were located on property adjacent to Parks's property; 2) Cline never saw the firearm under the doghouse; 3) Cline testified that she saw Parks near the doghouse; 4) a tracking expert observed a trial from Parks's backyard to the doghouse; 5) evidence supports the conclusion that Parks was not in jail more than forty-eight hours before the search warrant's execution so Parks was free to make the trial prior to the search warrant's execution; 6) Clarence Jenkins stated the weapon found under the doghouse was the weapon stolen from his father; 7) Clarence Jenkins testified that Parks brought the weapon to Jenkins's home where Clarence Jenkins and his wife, Jean Jenkins, watched Parks load the gun; and 8) Parks's attempts to impeach Clarence Jenkins were unsuccessful.

The arguments presented by Parks and the government can be reduced to an issue of witness credibility. Jurors have the discretion to accept and discredit witness testimony; such discretion is not allocated to an appellate court. In this case and based on the evidence presented, the jury could rationally choose to discredit Parks's witnesses. The government presented sufficient evidence that, viewed in the light most favorable to the government, would allow a rational jury to find Parks guilty beyond a reasonable doubt.

## II. Possession of a Firearm on March 28, 1998

■ Parks contends the government did not offer sufficient evidence to allow the jury to convict him for possession of a .22–caliber pistol on March 28, 1998. As with the pistol in Count One, the only issue was whether Parks actually or constructively possessed a firearm.

Parks contends he only exercised control over the firearm out of necessity to secure the safety of his son and others and held the gun until he could give it to his probation officer. Parks argues he took the firearm from his neighbor, Cline, to protect her and his son. Parks argues his actions fall within the defense of necessity under *United States v. Singleton*, 902 F.2d 471 (6th Cir.1990) (justification defense can be used by a felon accused of possession of a firearm), and *United States v. Newcomb*, 6 F.3d 1129 (6th Cir.1993) (necessity defense can be used by a felon accused of possession of a firearm).

Parks misconstrues the government's argument. The government states:

> It is not the government's position that the violation of the statute occurred while [Parks] held the gun in anticipation of its retrieval by his probation officer and the ATF agent. It is the government's position, and the evidence supports the conclusion, that [Parks] illegally possessed the gun, defendant's son found the gun which belonged to [Parks], and his son inadvertently caused it to be discovered by [Parks's] neighbor.

Final Br. of the United States at 23.

The government presented evidence that Parks possessed the gun before his son found it: 1) Cline testified that she took the gun from her son and the magazine was in the gun at the time; 2) Cline testified that, soon after she took the gun

away, Parks arrived at her home; 3) Cline testified that Parks told her someone must have thrown the gun in his yard or that the gun must have belonged to Cline; 4) Cline testified that Parks did not state he saw his son playing with the gun while Parks was in his kitchen; 5) Parks's probation officer, Robinette, testified that Parks told her he saw his son playing with the gun from Parks's kitchen window; 6) Parks took the gun from Cline and brought it to his home; and 7) Robinette testified that Parks told her he found the firearm's magazine in his driveway.

The arguments presented by Parks and the government can be reduced to an issue of witness credibility. Based on the evidence presented, the jury could rationally choose to discredit Parks and to credit Cline and Robinette. The government presented sufficient evidence that, viewed in the light most favorable to the government, would allow a rational jury to find Parks guilty beyond a reasonable doubt.

### III. Government Witness

Parks contends that, because he was not informed before trial of the government's promise to Jenkins that Jenkins would not be prosecuted in exchange for his testimony against Parks, Parks was unable to challenge Jenkins's credibility fully and effectively. Parks contends, "Had Parks had this available before trial, his opening statement and trial prosecution could have forcefully attacked Jenkins' credibility for the bargain with the government. It would have served as the connection that explained why Jenkins committed a felony and an impiety yet immediately turned and spoke against [Parks]...." Final Br. for Appellant at 21.

Parks argues the district court abused its discretion by failing to declare a mistrial based on prejudice to Parks for failure to disclose impeachment information based on Jenkins's bargain. Parks claims the government violated both *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) (prosecution must disclose impeachment material such as an agreement regarding avoidance of future prosecution), and *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) ("[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

The government contends no error occurred or, in the alternative, that any error was harmless. Noting that Parks learned of Jenkins's bargain at trial, the government argues, "What has occurred in this case is certainly not a complete failure to disclose *Brady* material, but at worst a delayed disclosure of exculpatory information. Thus, no *Brady* violation has occurred." Final Br. of the United States at 27.

We review a district court's denial of a motion for mistrial for abuse of discretion. *United States v. Bennett,* 975 F.2d 305, 307 (6th Cir.1992) (citing *United States v. Cordell,* 924 F.2d 614, 617 (6th Cir.1991)).

The government must turn over material favorable to a defendant and material to guilt or innocence. *Brady,* 373 U.S. at 87, 83 S.Ct. 1194. In *United States v. Agurs,* 427 U.S. 97, 112 n. 20, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Supreme Court stated that materiality for *Brady* purposes does not pertain to a defendant's ability to prepare for trial. Materiality pertains to the issue of guilt or innocence. *Id.* In *United States v. Bencs,* 28 F.3d 555, 560 (6th Cir.1994) (citations omitted), the Sixth Circuit stated, "Reversal for a *Brady* violation is required only where there is a reasonable probability that, had the evidence been disclosed, the result of the trial would have been differ-

ent.... Thus, *Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose." For a delay in access to material to violate *Brady,* the delay must cause prejudice. *Id.* at 561 (citing *United States v. Patrick,* 965 F.2d 1390, 1400 (6th Cir.1992)). Materiality, under *Brady,* is a mixed question of law and fact and, therefore, is reviewed de novo. *United States v. Phillip,* 948 F.2d 241, 250 (6th Cir.1991).

■ In this case, Parks's access to information on Jenkins's bargain was delayed, not denied altogether. The delay must have caused prejudice to Parks to constitute a *Brady* violation. A *Brady* violation occurred only if there is a reasonable probability that, had Jenkins's bargain been disclosed before trial, Parks's trial would have been different.

The district court did not err in denying a mistrial. When Parks's counsel discovered Jenkins's bargain during cross-examination, he moved for a mistrial. In response, the government explained that the bargain was not reached until the Friday afternoon before the trial, which began on the following Monday. Parks's counsel argued that he would have referred to the bargain in his opening statement and general theme for the case. The district court stated:

> I don't think you have been prejudiced at this point. I think it's very effective the way it has been brought out at this point. I do recognize the fact that you could have brought that up at the beginning. If you did that, they would have done a little more to defuse it as well.

J.A. at 215.

Parks's complaint about the effect of delayed disclosure on trial preparation and strategy overlooks the narrow scope of *Brady* and *Giglio.* Those cases require disclosure of impeachment information when it is material to guilt or innocence, not when it simply might assist in trial preparation. Parks's brief spends much time on how the information was material to trial strategy, but it does not discuss how the information was material to guilt or innocence. That is not to say that the information was not material to guilt or innocence. Parks's brief, however, does not address materiality to guilt or innocence; it simply discusses materiality to trial strategy–an aspect not protected by *Brady* and *Giglio.*

In any event, there was no prejudice. Parks's counsel had the opportunity to develop the information during cross-examination and use it in closing argument. As the district court noted, if Parks's counsel had mentioned the bargain in his opening statement, the government might have done more to deflect Parks's claim of bias on Jenkins's part by having him testify on direct examination about his agreement.

Jenkins's bargain was not material under *Brady,* and the district court did not abuse its discretion in denying the motion for a mistrial.

## IV. Two–Level Enhancement

Parks argues that the district court erred in sentencing by finding that he had stolen one of the guns that he had possessed requiring a two-level offense level enhancement without sufficient evidence. Although there appears to be ample evidence of the theft from Jenkins's testimony, we need not reach Parks's argument because the enhancement appeared to have no effect on his sentence.

The base offense level for being a felon in possession of a firearm is 24. *See* U.S.S.G. § 2K2.1(a)(2). The probation officer recommended an enhancement of two points, pursuant to U.S.S.G. § 2K2 .1(b)(4), for one of the possessed guns having been stolen. The enhancement would have raised Parks's offence level to 26. However, Parks was bumped to an entirely dif-

ferent track because he was subject to enhanced sentencing under 18 U.S.C. § 924(e). Section 924(e) is triggered when the felon convicted for possession has three prior convictions for crimes of violence. Under those circumstances, he is considered an "armed career criminal" and is subject to sentencing under U.S.S.G. § 4B1.4. J.A. at 329. Parks had three such prior convictions. U.S.S.G. § 4B1.4(b)(3)(B) specifies a flat offense level of 33, as an alternative to sentencing under Chapter 2, if the defendant is an "armed career criminal." The "armed career criminal" sentence is indifferent to whether the gun possessed was stolen.

Thus, whether the court erred in finding the gun stolen for purposes of Chapter 2 analysis or not, the court's determination that Parks was an "armed career criminal" required an offense level of 33, and was not adjusted for the gun having been stolen. Parks does not argue that the district court erred in finding him an armed career criminal. The court's preliminary sentencing finding of a stolen gun enhancement had no effect on Parks's sentence, and thus we need not review its propriety.

## V. Calculation of Sentences

Parks contends that his criminal history calculation was too high because the district court incorrectly counted three previous sentences independently when they were served concurrently.

■ This court reviews a district court's findings of fact in consolidating convictions for sentencing for clear error. *United States v. McAdams*, 25 F.3d 370, 374 (6th Cir.1994) (citing 18 § U.S.C.

3742(e)). We must give due deference to the trial court's application of the Sentencing Guidelines to the facts of the case. *Id.* (citing 18 U.S.C. § 3742(e)).

Under the United States Sentencing Guidelines, "Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases [1] are to be treated as one sentence for purposes of § 4A1.1(a), (b), and (c)." U.S.S.G. § 4A1.2(a)(2).

■ Parks argues that the district court erroneously unbundled three prior convictions because those sentences were served concurrently; thus, he asserts those sentences should have been deemed to have been related under § 4A1.2(a)(2). In any event, Parks contends that the district court erred by failing to make specific findings of fact in overruling Parks's objection to the calculation of sentences.

The government contends:

A review of these three offenses reveals that they are totally unrelated, and the defendant's only argument that they are related arises from the fact that the sentences imposed in each of the cases were ordered to be served concurrently with each other. The fact that sentences are ordered to be served concurrently simply does not suggest that the cases were consolidated for sentencing.

Final Br. of the United States at 30–31.

Parks was sentenced to three to five years imprisonment for third-degree burglary in Benton County Circuit Court in Camden, Tennessee on December 10, 1984. Parks was sentenced to four years impris-

---

1. The guidelines provide:

Related Cases. Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing.

U.S.S.G. § 4A1.2, cmt. n. 3.

onment for illegal purchase of a firearm in the United States District Court for the Middle District of Florida on December 27, 1985. These two sentences were served concurrently with a sentence of five years imprisonment for aiding and abetting interstate travel to carry on unlawful activity in the United States District Court for the Western District of Tennessee on February 20, 1985.

These sentences were not related under the Sentencing Guidelines and cannot be considered one offense for sentence calculation purposes. The crimes were different and occurred on different dates and in different states. The trial courts did not order consolidation of the cases. The cases were treated differently and were, therefore, unrelated. *See, e.g., United States v. Coleman,* 964 F.2d 564, 567 (6th Cir.1992) ("[Defendant] says his convictions for the two 1975 armed robberies were consolidated for sentencing because he was sentenced for both robberies on the same day in the same court and received concurrent sentences. These facts, in and of themselves, ... do not suggest that the cases were consolidated for sentencing."). The district court's calculation of sentences was not erroneous.

The district court's determination also was not clearly erroneous for lack of factual findings under Rule 32(c)(1). After listening to Parks's objection, the district court stated, "All right. Your objection is noted and overruled. It will be three points for each one of the separate crimes." J.A. at 277.

The colloquy between the district court and Parks during sentencing demonstrates that the district court was fully cognizant of Parks's objection and determined to count the three offenses separately. The district court thus made an adequate finding. The district court's decision to count the three offenses separately in calculating

Parks's sentence was not clearly erroneous.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.